### 66142. CORNELL-YOUNG (MACON PRE-STRESSED CONCRETE COMPANY) et al. v. MINTER.

QUILLIAN, Presiding Judge.

Cornell-Young, the employer, and its insurance company, Maryland Casualty Co., appeal the judgment of the trial court reversing the award of the State Board of Workers' Compensation.

The appeal arose from the following facts: On September 8, 1980, Johnny Minter, the claimant, injured his back while lifting "side railing" while in the employ of Cornell-Young. He missed two days of work—that day and the day following—and subsequently on October 20, 1980, and for an extended period was unable to work. On October 31, 1980, the employer filed with the Board a *Notice of Payment of Benefits* (Form WC 2) that benefits would begin as of October 25, 1980—after the expiration of the seven-day waiting period provided in OCGA § 34-9-220 (former Code Ann. § 114-401). At the same time a Form WC 1 —*Employer's First Report of Injury* —was filed. This form set out the date employer was first aware of the injury as "9-8-80." Then, on November 10, 1980 the employer filed another Form WC 2 this time as a *Notice of Suspension of Benefits* setting forth that benefits were suspended on November 3, 1980, for the reason that "employee returned to work 11-3-80."

It appears that claimant did return to work on November 3, 1980, with a slip from his doctor which read: "Johnny Minter has been under my care from 10-28-80 to present and is able to return to work on 11-3-80." For "about a week and a half or two weeks" the claimant did light work and then began normal duties. Claimant's immediate supervisor stated that claimant "told his superintendent that the doctor said for him to go on light duty, so we put him on light duty work." He added that it was a general practice to put anyone who had been injured on light duty. He then testified "after two weeks and the doctor released him, we put him back on normal duty."

On November 21, 1980, the claimant's employment was terminated. According to the witnesses for the employer the termination resulted from a cut back of the employer's work force. The claimant testified once he returned to normal work his back

began hurting and his condition worsened to the point where he could no longer perform such duties. He further testified he told his supervisor about this shortly before his employment ended. There was testimony that afterwards the claimant was incapacitated for a period of time; that he then began doing "light work," such as odd jobs not involving any heavy lifting; that he was unable to obtain employment such as that he engaged in before he was injured; that he continued to visit doctors, complaining of back pain.

When this case came on for hearing before the ALJ, he ruled that, since the employer had not timely filed the required forms in that the Form WC 2— *Suspension of Payment*—failed to include medical reports or to show that the claimant had returned to work without restriction, the burden was on the employer/insurer to show a change of condition. In the award issued subsequently the ALJ found: "Employer/insurer has failed to show by a preponderance of the evidence that claimant underwent a change in condition as contemplated by Code Section 114-709 et seq., as amended July 1, 1978. On the contrary, employer/insurer's medical exhibits . . . confirm Dr. Naidu's opinion that claimant's knee and back condition could arise periodically from claimant's back injury of September 8, 1980, and corroborates the existence of 'low back pain and bilateral leg intermittent pain and numbness induced by a suspected herniated lumbar disc.' " The award as issued found the claimant was entitled to benefits and imposed penalties as well as attorney fees. On review by the Full Board, that body found: "the claimant had returned to work when benefits were terminated as of November 3, 1980. The burden of proof was upon the claimant. Any economic loss after being laid off in November is not shown by the preponderance of evidence to be attributable to work-related injury." The Board therefore denied the claim of the employee-claimant for income benefits.

Appeal was taken by the claimant to the Clayton Superior Court. The trial judge reversed the Board on two grounds: 1) that the Form WC 2 was not accompanied by a medical report resulting in an improper termination which placed the burden of proof on the employer/insurer to show a change of condition, 2) that, even if the burden were properly on the claimant, the original hearing was conducted with the burden on the employer/insurer and the claimant as respondent or defendant, and, as a result, the claimant was deprived of the opportunity to present evidence as a plaintiff. *Held:*

1. The first issue that presents itself is on whom did the burden of proof lie. This court by a series of recent decisions has made it clear that the failure to timely file certain forms or otherwise meet deadlines or procedural requirements are subject to the sanctions

imposed by the code but do not effectuate an estoppel or cause a shift in the burden of proof. *Raines & Milam v. Milam,* 161 Ga. App. 860, 862 (289 SE2d 785); *Holt Service Co. v. Modlin,* 163 Ga. App. 283, 286 (293 SE2d 741); *Kelley v. West Point Pepperell,* 164 Ga. App. 187 (2) (296 SE2d 191).

As a general rule, the burden is on the claimant to show his injury is compensable. *Commercial Union Assn. Co. v. Couch,* 143 Ga. App. 64, 65 (237 SE2d 528). As stated in *Argonaut Ins. Co. v. King,* 127 Ga. App. 566, 567 (194 SE2d 282): "[T]here is a general burden on the plaintiff to prove the essential elements of his claim, including the fact that the accident arose out of his employment." The employer has the burden when raising an affirmative defense, such as wilful misconduct. OCGA § 34-9-17 (Code Ann. § 114-105); *Beck v. Brower,* 101 Ga. App. 227 (2) (113 SE2d 220). Where a change of condition was asserted, the burden of establishing this was on the party claiming such change under our former procedure. *Fortson v. American Surety Co.,* 92 Ga. App. 625 (2) (89 SE2d 671). This was true because the award of the board was res judicata and conclusive until superseded by a new award. *Complete Auto Transit v. Davis,* 101 Ga. App. 849 (115 SE2d 482); *Hartford Accident &c. Co. v. Webb,* 109 Ga. App. 667 (1) (137 SE2d 362).

Now, of course, under the recent law we have situations where payments are begun and discontinued, all without the approval or scrutiny of the State Board of Workers' Compensation. In such posture, we must determine whether in this case the burden should rest on the employee-claimant or the employer/insurer.

Since there is no final judgment, the question as to which party is actually seeking a change in condition is not readily ascertainable. However, an examination of the basic principles utilized formerly should serve as guideposts.

An apt precept to observe is found in Hiers and Potter, Ga. Workers' Compensation—Law and Practice, § 12-15, wherein it is stated on page 155: "The nature of the case dictates which party has the burden and goes forward with the evidence."

Counsel for claimant argues, with much justification, that the employer should not be permitted to cease payments by giving notice, force the employee to complain and seek a hearing and thereby impose the burden of proof on the employee to show that he is still disabled, that is—that no change in condition occurred. Certainly superficial factors should not be the measure or test. If an employer begins to make payments and continues over a period of time but then abruptly ceases those payments, the burden should not necessarily be on the employee to establish his entire case, but instead, even though the employee might request the hearing, the

employer should have the burden of showing a change in condition to justify cessation of the payments. On the other hand, if after beginning to make payments, the employer timely files a Form WC 2 and a Form WC 3, a *"Notice to Controvert Payment of Compensation,"* then certainly there are good reasons to place the burden on the employee to establish his claim since this is the initial hearing of the matter and not a change in condition.

Hiers and Potter, supra, have an excellent summation for situations closely akin to those in the case sub judice. They expound the law as follows: "If an employee has actually returned to work after having received compensation, and then alleges a further inability to work, then the burden of proof is upon that employee to show that he has undergone a change in condition. If, however, the employer and insurance carrier unilaterally suspend benefits based upon their allegation that the employee has the ability to return to work, then the burden of proof is upon the employer and insurance carrier to justify their suspension of benefits." Ga. Workers' Compensation § 23-6, p. 226. See as to these two situations, *Employers Ins. v. Carnes,* 148 Ga. App. 767 (252 SE2d 654); *Peterson/Puritan, Inc. v. Day,* 157 Ga. App. 827 (278 SE2d 674) and *Sadie G. Mays Mem. Nursing Home v. Freeman,* 163 Ga. App. 557 (295 SE2d 340).

We are cited valid authority under the former law that return to work is not equivalent to a change in condition. As held in *Commonwealth Ins. Co. v. Arnold,* 112 Ga. App. 140, 141 (144 SE2d 194): "'[T]he mere fact of an employee's going back to work does not conclusively show that he has recovered from an injury. *Bell v. Liberty Mut. Ins. Co.,* 108 Ga. App. 173 (132 SE2d 538). Neither does merely going back to work show a change in condition for the better.' *Liberty Mut. Ins. Co. v. Archer,* 108 Ga. App. 563, 564 (134 SE2d 204)."

*Hartford Accident &c. Co. v. Bristol,* 242 Ga. 287 (248 SE2d 661) is a case closely on point, although we note it was decided based on the law prior to 1978. Under the circumstances therein described it was held: "In the present case the claimant sustained a compensated back injury. After medical treatment, he returned to work with the same employer, performing less strenuous duties. Thereafter, he was laid off after his employer no longer had any work for any of his employees, including the claimant. He was required by Code Ann. § 114-709, as amended in 1968, to show that his inability to secure suitable employment elsewhere was proximately caused by his previous accidental injury." Id. at 288.

Since it was decided based on the law prior to 1978, *Bristol,* supra, serves to ameliorate the decisions holding that return to work is not equivalent to change in condition. In our view, it controls this

case insofar as the burden is placed on the claimant.

Effective July 1, 1983, and thus not applicable to the case sub judice, Rule 221 (i) (4) of the Rules and Regulations of the State Board of Workers' Compensation (Appendix OCGA) (Code Ann. Rule 705) now provides: "When suspending benefits for release to return to work without restrictions the employer/insurer shall attach to the Form No. WC 2 a copy of the supporting medical report from claimant's authorized treating physician." It is argued, however, that this shows that prior to the effective date of the rules a medical report had to be attached to the Form WC 2. We note that even if this were true the words "release to return to work" are not the same as an actual return to work. It should be observed that also effective July 1, 1983, the rules provide: "Suspension of benefits at anytime on the grounds of change in condition requires ten days' advance notice unless the employee has actually returned to work." OCGA Appendix Rule 221 (i) (1) (Code Ann. Rule 705). Thus, the new rules apparently place an actual return to work in a distinctive category.

Having already covered the effect of Rules violations concerning on whom the burden of proof is placed, we do not find the new rules provisions to cause any modification of our holding.

2. Although the burden of showing a change in condition might rest on the claimant, his counsel argues that the case was first heard based on the burden lying with the employer and that to subsequently find as the Full Board did that the burden was on the claimant and then decide the issues based on the record developed under an erroneous theory served to deprive the claimant of a fair hearing since he was acting from the posture of a defendant, needing only to refute the proof offered by the employer/insurer. It is now urged that he should be given a new hearing in order to fully develop and present his case with knowledge that he must establish the essential facts to show a change in condition.

Counsel for the employer/insurer dispute this contention and offer as authority the case of *Linder v. Alterman Foods,* 162 Ga. App. 786, 789 (3) (292 SE2d 900), wherein it was held: "It is very apparent from the record that the burden of proof was placed on the claimant in spite of the applicable rule when the employer fails to properly file Form WC 3, adopted by the board, Rule 705 (d), that 'the accident will be presumed to be compensable, subject to rebuttal.' Yet both sides had ample opportunity to present all evidence in support of the issues, and we see no necessity for the case to be remanded for further consideration by the board."

We do not find that case to be controlling here. The presumption based on Rule 705 has been declared inoperable. *Holt Service Co. v. Modlin,* 163 Ga. App. 283, supra. While we agree with the reasoning

that ordinarily a case need not be remanded where both sides had ample opportunity to fully present evidence, such situation does not obtain here.

In *Outler v. Southern Bell Tel. &c. Co.,* 152 Ga. App. 424 (263 SE2d 230) following *Hartford Accident &c. Co. v. Bristol,* 242 Ga. 287 supra, this Court recognized that even though the employee might be terminated for reasons unrelated to his disability the crucial issue was whether the employee's inability to secure suitable employment elsewhere was proximately caused by his previous accidental injury. This is a maxim well established in Workers' Compensation Law. Thus, when an employee, following a disabling injury, returns to work and is then discharged for a cause unrelated to the injury (or if he voluntarily quits), this alone does not justify denial of compensation since he is entitled to benefits if because of his disability he is unable to find employment. *Beachamp v. Aetna Cas. &c. Co.,* 112 Ga. App. 417, 418 (145 SE2d 605); *Jenkins Enterprises v. Williams,* 122 Ga. App. 840, 841 (178 SE2d 926); *Fleming v. U. S. Fidelity &c. Co.,* 137 Ga. App. 492 (224 SE2d 127); *Continental Ins. Co. v. Lamar,* 147 Ga. App. 487 (249 SE2d 304); *Commercial Union Ins. Co. v. Weeks,* 155 Ga. App. 20, 23 (270 SE2d 259); *Mills v. Pepsi-Cola Bottlers,* 160 Ga. App. 349, 350 (287 SE2d 41).

It therefore appears that the employee-claimant was harmed by the manner in which the issues were considered. At the first hearing the burden was placed on the employer/insurer to establish that there was no economic loss attributable to the work related injury and most of the evidence in this regard was brought out on cross-examination. We observe that there was a showing that after his discharge the claimant was not able to do the same type of work as before. Therefore, there was evidence sufficient for an appellate court to sustain a finding of partial disability. The Board's holding based on "the preponderance of evidence" shows while this evidence might have been recognized, it was considered inadequate to carry employee's burden, based on the then existing record. For the Full Board to determine first that the burden should have been on the employee-claimant all along and then decide the factual issue based on a record produced under vastly different circumstances than if it had been approached in the first instance with the burden resting on the claimant amounts to an ex post facto application which could only be harmful to the claimant.

We believe that fundamental fairness is best served by the case being remanded to the State Board of Workers' Compensation for a new hearing. Accordingly, the judgment is affirmed with direction that the case be remanded to the State Board of Workers' Compensation for a new evidentiary hearing in conformity with this

opinion.

*Judgment affirmed with direction. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 6, 1983.

*H. Michael Bagley,* for appellants.
*A. J. Welch, Jr.,* for appellee.