66679. GEORGIA POWER COMPANY v. BROWN.

CARLEY, Judge.

While engaged in his employment with appellant-employer, appellee-employee suffered a knee injury. Appellee subsequently underwent surgery on his knee and was unable to work for nine

months. During that period, appellee received workers' compensation disability benefits. In June of 1981, appellee returned to work and began to perform all of his former duties. Accordingly, his compensation benefits were terminated. Appellee continued to perform all of his former duties although he experienced pain and soreness in doing so. Then, on or about August 14, 1981, appellee's knee gave way and he fell while at work. Appellee was required to seek additional medical treatment for his knee, but apparently continued to perform all of his duties until September of 1981, when he was terminated from his employment for reasons unconnected with his physical condition.

Thereafter, appellee instituted a "change of condition" proceeding, seeking the restoration of his workers' compensation disability benefits. A hearing was held before an administrative law judge (ALJ) who found, on the above evidence, that appellee had undergone a change of condition as of the date of the termination of his employment with appellant. Because appellee was engaged in part-time work for another employer at the time of the hearing, the ALJ determined that appellee was partially disabled and should be awarded compensation benefits pursuant to OCGA § 34-9-262 (Code Ann. § 114-405). On his own motion, the ALJ also ordered a change in appellee's physician. After a de novo hearing, the full board adopted the award of the ALJ. On appeal to the superior court, the award to appellee was affirmed. Appellant's application to this court for a discretionary appeal was granted.

1. Pursuant to OCGA § 34-9-102 (e)(2) (Code Ann. § 114-707), appellee introduced at the hearing certain medical reports which had been signed by a physician. Pursuant to the same statute, appellant invoked its right of cross-examination and gave notice that the physician whose signature appeared on the reports would be deposed. Appellee personally appeared at the scheduled deposition, along with his attorney. However, the physician who was to be deposed refused to testify in the presence of appellee. Appellee insisted that he had the right to be present during the physician's deposition and that, if that right would not be afforded, neither he nor his counsel would attend the deposition. The only response of appellant's counsel was to state his intention of "going forward" with the deposition regardless of the presence or the absence of appellee and his counsel. After appellee and his counsel left, the deposition of the physician was taken by appellant's counsel and then submitted to the ALJ. Appellee objected to the ALJ's consideration of the deposition in making the award. The objection was sustained and the ALJ did not consider the deposition. The full board likewise refused to consider the deposition, and the superior court, in its order affirming the

award, specifically held that the evidence was properly excluded. On appeal to this court, appellant asserts that the deposition was erroneously excluded from consideration.

The discovery procedure in workers' compensation cases is governed and controlled by the Civil Practice Act (CPA). OCGA § 34-9-102 (d)(1) (Code Ann. § 114-707). Under the CPA, one clearly has the right to attend a deposition which is being taken for use in a case in which he is a party. "[W]hen a deposition is taken . . ., the opposing party or his counsel have the right to be present. The exclusion of [a party] and [his] counsel from the taking of the deposition . . . would void the procedure, if otherwise valid." *Reynolds v. Reynolds,* 217 Ga. 234, 245 (123 SE2d 115) (1961) (construing former Code Ann. § 38-2101 et seq.), overruled on other grounds, *Scherer v. Scherer,* 249 Ga. 635, 640 (292 SE2d 662) (1982).

It is true that, in the instant case, appellee was not excluded from attending the deposition by the direct actions of appellant's counsel. Instead, appellee's absence was the direct result of the unwarranted recalcitrance of the deponent. However, we do not believe that this fact alone would legitimate an otherwise "void" procedure and authorize appellant's counsel to proceed with the deposition in the absence of appellee. If the prospective deponent could not be convinced to give his testimony while appellee was present, there were remedies available to appellant by which to secure the enforcement of its right to depose the physician in a manner that would not "void" the entire procedure. See OCGA §§ 34-9-102 (d)(2) (Code Ann. § 114-707), 9-11-37 (Code Ann. § 81A-137). Appellant chose not to do so, opting instead to depose a witness who agreed to testify only in contravention of appellee's right to be present. The result of appellant's election to proceed in appellee's absence was to void a procedure which would otherwise have been valid under OCGA § 34-9-102 (e)(2) (Code Ann. § 114-707). See *Commercial Union Ins. Co. v. Crews,* 139 Ga. App. 521 (229 SE2d 14) (1976); *Rachel v. Simmons Co.,* 141 Ga. App. 236 (233 SE2d 56) (1977).

The deposition was not erroneously excluded from consideration in making the award to appellee.

2. Appellant asserts that the award to appellee was predicated upon an erroneous legal theory and that the facts as found by the ALJ did not authorize the award. The relevant portions of the ALJ's award, as adopted by the full board, are as follows: "After careful consideration of all the evidence I conclude and find as fact [appellee] had not been cured nor had he recovered from the left knee injury when he was terminated on September 24, 1981. [Appellee] was working at his old winch-truck operator job with great effort and

while in pain was being paid the same wages as prior to injury, however, when [appellant] terminated [appellee] he was entitled to have his weekly income benefits reinstated under these facts. See *Beachamp v. Aetna Casualty and Surety Company,* et al., 112 Ga. App. 417. [(145 SE2d 605) (1965)]." (R-165)

The *Beachamp* decision, cited as the authority for the award made to appellee, does in fact hold that "[d]ischarge for . . . cause after an employee has become disabled and returned to work does not in our opinion justify denial of compensation. [Cits.] . . . [It is] an erroneous legal theory, that when an employee following a disabling injury returns to work and then is discharged for a cause unrelated to the injury he is not entitled to compensation *as a matter of law.*" (Emphasis supplied.) *Beachamp v. Aetna Cas. &c. Co.,* supra at 418. However, *Beachamp* does not stand for the proposition that an employee who was formerly disabled but who has since returned to work is *automatically* entitled to receive an award of compensation upon the subsequent termination of his employment. "If the employment was covered by the [Workers'] Compensation Act, the question remains whether the employee's injury sustained during the course of the employment caused him to be disabled to any extent, in order words, whether it caused a loss of earning capacity." *Beachamp v. Aetna Cas. &c. Co.,* supra at 418. Accordingly, the dispositive issue in the instant case was whether appellee suffered a loss of earning capacity as the result of an injury sustained while in appellant's employment.

Appellee sought disability benefits because of a change in his condition. A " 'change of condition' means a change in the wage-earning capacity, physical condition, or status of an employee . . ., which change must have occurred after the date on which the wage-earning capacity, physical condition or status of the employee . . . was last established by award or otherwise." OCGA § 34-9-104 (a) (Code Ann. § 114-709). Upon the showing of a change of condition, the board may render a decision "ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision . ." OCGA § 34-9-104 (b) (Code Ann. § 114-709). Where an employer seeks to end disability income benefits pursuant to the above statutory provision or where, as here, an employee seeks a resumption of those benefits, the only relevant "change of condition" is a change in the employee's "wage-earning capacity," not in his physical condition. See *Peterson/Puritan, Inc. v. Day,* 157 Ga. App. 827 (278 SE2d 674) (1981). This is true because the only relevant issue in determining whether an employee is entitled to disability income benefits as the result of an employment-related accident is whether he has suffered an impairment of his earning

capacity as the result of the accident, not whether he has suffered physically. See *Hensel Phelps Constr. Co. v. Manigault,* 167 Ga. App. 599 (307 SE2d 79) (1983).

Therefore, the mere fact that appellee was experiencing physical pain while fully performing his job for appellant does not support a finding that he had suffered a change of condition for purposes of receiving income disability benefits. "Inasmuch as the element of pain and suffering, or increased discomfort or difficulty in performing the duties after an injury is not taken into consideration by the [Workers'] Compensation Act ([cit.]), the claimant's . . . injuries in and of themselves would not require a finding that there had been any change in condition which would authorize a payment of compensation for a loss of earning capacity. [Cit.]" *Hall v. St. Paul-Mercury Indem. Co.,* 96 Ga. App. 567, 569-570 (101 SE2d 94) (1957). Nor would the mere fact that appellee was no longer employed by appellant, having been terminated for cause, authorize a finding that he was entitled to a resumption of income disability benefits. Under the facts of the instant case, the burden was on appellee to show that, after his termination for cause, "his inability to secure suitable employment elsewhere was proximately caused by his previous accidental injury." *Hartford Acc. &c. Co. v. Bristol,* 242 Ga. 287, 288 (248 SE2d 661) (1978).

It is unclear from the ALJ's findings exactly what served as the basis for the award of a resumption of disability benefits to appellee. Apparently, it was the ALJ's interpretation of the *Beachamp* decision as authority for the proposition that an employee who has returned to full employment but who is suffering physical pain from a previous compensable injury is, ipso facto, entitled to a resumption of disability income benefits when his employment is terminated for cause. If this interpretation of *Beachamp* was the basis of the ALJ's decision, the award was predicated upon an erroneous legal theory. As noted above, an employee who has returned to work and who no longer receives compensation benefits is not entitled to a resumption of those benefits after termination for cause unless he has subsequently suffered an economic change in condition. The requisite economic change in condition exists when the employee is able to demonstrate that, as a proximate result of his previous work related injury, he is unable to secure suitable employment elsewhere. *Hartford Acc. &c. Co. v. Bristol,* supra. The correct interpretation of the holding in *Beachamp* is that "when an employee is still suffering from a work related disability and is terminated even for just cause, *if because of his disability, he is unable to find employment,* he is entitled to have his income benefits reinstated. [Cits.]" (Emphasis supplied.) *Mills v. Pepsi-Cola Bottlers,* 160 Ga. App. 349, 352 (287

SE2d 41) (1981).

If, on the other hand, the ALJ intended to base the award of disability benefits upon the correct legal theory, the findings which were actually made would not authorize a resumption of appellee's benefits. The ALJ's findings relate solely to the fact that appellee was experiencing physical pain in the performance of his job at the time he was terminated for cause. Although appellee may have been experiencing such pain at the time he was terminated, he would not be entitled to a resumption of income disability benefits *unless* the proximate cause of his inability to secure employment elsewhere was his originally compensable knee injury. *Hartford Acc. &c. Co. v. Bristol,* supra; *Mills v. Pepsi-Cola Bottlers,* supra. The award makes no findings whatsoever with regard to whether appellee's inability to secure other than part-time employment after he was terminated by appellant was the result of the knee injury he suffered while in appellant's employment.

The superior court erred in affirming the award and in failing to return the case to the full board so that appropriate findings based upon the correct legal theory of "change of condition" might be made. See *Outler v. Southern Bell Telephone &c. Co.,* 152 Ga. App. 424 (263 SE2d 230) (1979).

3. Appellee's treating physician was the deponent who, as discussed in Division 1, refused to be deposed in the presence of appellee. Based upon this incident, the ALJ ordered that appellee's authorized treating physician be changed. The ALJ made this determination sua sponte, neither appellee nor appellant having requested a change of physicians pursuant to OCGA § 34-9-200 (Code Ann. § 114-501). Appellant asserts that this unilateral action by the ALJ was erroneous.

"*Upon the request of an employee or an employer,* the board may order a change of physician or treatment as provided under Code Section 34-9-200 [Code Ann. § 114-501]." (Emphasis supplied.) OCGA § 34-9-201 (d) (Code Ann. § 114-504). "*Upon the request of an employee or an employer,* the board may in its judgment, after giving notice in writing of the request to all interested parties and allowing any interested party ten days from the date of said notice to file in writing its objections to the request, order a change of physician or treatment and designate other treatment or another physician . . ." (Emphasis supplied.) OCGA § 34-9-200 (d) (Code Ann. § 114-501). It is apparent from the clear wording of the above statutory provisions that the board has authority to order a change of physicians *only* upon the request of the employee or the employer. No such request appears in the record before us. Accordingly, the ALJ exceeded his authority in ordering, sua sponte, a change of appellee's physicians.

Moreover, even if a request for a change of physicians had been made by appellee, it does not appear from the record before us that appellant was given the requisite 10-day notice within which to file its objections. Accordingly, for this additional reason the ALJ lacked the authority to order a change in appellee's physicians and the superior court erred in affirming the award in this regard. *City of Acworth v. Williams,* 162 Ga. App. 694 (293 SE2d 352) (1982).

4. Remaining enumerations of error, not otherwise addressed, are rendered moot by our reversal of the judgment for the reasons stated.

5. The order affirming the award is reversed with direction that the case be remanded to the board for further proceedings not inconsistent with this opinion.

*Judgment reversed with direction. Deen, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 28, 1983.

*H. Lowell Hopkins, Steven L. Head,* for appellant.
*Sandra K. Bell,* for appellee.