70032. FULTON-DeKALB HOSPITAL AUTHORITY v. HADLEY.
(330 SE2d 432)

POPE, Judge.

Workers' compensation. The Fulton-DeKalb Hospital Authority, d/b/a Grady Memorial Hospital (hereinafter "Grady"), brings this appeal from an award of workers' compensation benefits to claimant Maria Hadley. As is pertinent here, the evidence shows that claimant is employed as a housekeeping aide at Grady. She testified that she sustained an injury on April 18, 1983 when the globe of a light fixture which she was preparing to dust fell onto her head and then into a sink, splattering glass into her face and causing injury to her left eye. A registered nurse was seated a few feet away at the time of the accident, and, although she did not see the accident occur, she ran to assist claimant and offered emergency treatment which claimant refused. Claimant was immediately taken to Grady's eye clinic where emergency treatment was rendered. Claimant testified that she felt glass in her eye, but she did not know whether any glass was removed therefrom during the emergency treatment. Glass parts of the globe were found in the sink and on the floor around the sink. Claimant further testified that her vision before the accident was normal, al-

though there is some indication in the record that she had previously complained of "double vision." There is conflicting medical testimony — Dr. W. H. Coles, an ophthalmologist, finding no loss of vision resulting from the accident; and Dr. Garris Saliba, an optometrist, finding a substantial decrease in vision in the claimant's left eye. Dr. Saliba testified that while claimant's condition would not lead to "double vision," a patient may complain of "double vision" when they mean something else.

The Administrative Law Judge (ALJ) found as a matter of fact that although Grady referred to claimant's having complained of "double vision" as early as 1981, claimant did sustain a compensable injury which aggravated any previous eye condition that she may have had and thus carried her burden of proof. The ALJ also found that claimant's return to work within 10 days after the accident "disputes the . . . contention that she is malingering or pretending an injury with resulting specific member disability." The award of the ALJ was made the award of the full board and was subsequently affirmed by the superior court. Grady assigns error in awarding compensation for an injury to a specific body member of a type not readily ascertainable by a layman (an eye injury) where there was no medical evidence as to a causal relationship between the accident alleged and the injury complained of. Grady further challenges the award in this case on the ground that claimant's sole expert was an optometrist whose testimony was contradicted by that of an ophthalmologist.

1. Grady posits several arguments in support of its assertion that there was no causal connection between the glass splattering accident and claimant's loss of vision. First, Grady points to the opinion of Dr. Coles, the ophthalmologist, that there was no damage to claimant's left eye resulting from this accident. Although his tests indicated the vision in claimant's left eye to be 20/200 (normal vision is 20/20), Dr. Coles questioned the accuracy of this measurement because of claimant's inconsistent responses to some of the tests. Dr. Saliba, the optometrist, gave no opinion as to the cause of claimant's loss of vision. However, his tests also indicated the visual acuity in claimant's left eye to be 20/200. In light of this "expert" medical testimony, Grady argues that there is no evidence indicating the glass splattering accident was the precipitating cause of claimant's loss of vision. In reply to this assertion, we paraphrase from the opinion in *Southern R. Co. v. Tankersley*, 3 Ga. App. 548 (1) (60 SE 297) (1908): It need only be said that claimant herself swore before the ALJ that she was injured, describing the character and extent of her injuries and the extent of her resultant disability. This testimony of the claimant was obviously believed by the ALJ and subsequently by the board. They had the right to believe it notwithstanding the adverse testimony of Grady's

ophthalmologist. The claimant knew whether she had suffered a loss of vision, and, if entitled to credit, her knowledge would and ought to have outweighed the opinion of "a whole college of physicians." It may be added that there is other evidence which tends to corroborate the claimant as to her injury. This, however, is not a matter for this court, but was a matter for the ALJ and the board. Accord *City of Atlanta v. Champe*, 66 Ga. 659, 662-63 (1881). "A medical expert witness may give his opinion as to the cause of an injury; but where the cause of the injury constitutes the ultimate issue of fact to be determined by the fact-finding tribunal, this opinion is not absolutely binding on such tribunal. To hold otherwise would preclude such tribunal from exercising its proper function. The fact-finding body must take the evidence of the medical expert along with all other facts and circumstances of the case, and thus determine the ultimate issue." *Autry v. Gen. Motors BOP Assembly Plant*, 85 Ga. App. 500 (69 SE2d 697) (1952). See *Fox v. Hartford Acc. &c. Co.*, 130 Ga. App. 104 (1) (202 SE2d 568) (1973); *Zurich Ins. Co. v. Robinson*, 123 Ga. App. 582 (1) (181 SE2d 923) (1971). It follows that the non-expert testimony of the claimant herself was sufficient to prove a causal link between the glass splattering accident and her subsequent loss of vision. See, e.g., *B.P.O. Elks Lodge No. 230 v. Foster*, 91 Ga. App. 696, 697 (86 SE2d 725) (1955); see also *Medley v. Hartford Acc. &c. Co.*, 121 Ga. App. 54 (1) (172 SE2d 461) (1970).

Applying the "any evidence" principles of *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408 (224 SE2d 65) (1976), we conclude that the board's award is supported by competent evidence of record and we are thus bound to affirm it. See, e.g., *B. F. Goodrich Co. v. Arnold*, 88 Ga. App. 64 (76 SE2d 20) (1953); *American Motorists Ins. Co. v. Blaylock*, 84 Ga. App. 409 (66 SE2d 126) (1951); *Maryland Cas. Co. v. Hopkins*, 71 Ga. App. 175 (30 SE2d 357) (1944); *Continental Cas. Co. v. Bennett*, 69 Ga. App. 683 (26 SE2d 682) (1943). Cf. *Bituminous Cas. Corp. v. Jackson*, 68 Ga. App. 447, 448-50 (23 SE2d 191) (1942).

Grady's reliance on the "natural inference" rule is misplaced, the cause of claimant's injury in the case at bar not being "unexplained." See *Southwire Co. v. Cato*, 250 Ga. 895, 896 (302 SE2d 91) (1983); see also *Zippy Mart v. Fender*, 170 Ga. App. 617, 620 (317 SE2d 575) (1984). Grady's reliance on *Atkinson v. Fairforest Co.*, 90 Ga. App. 425 (83 SE2d 243) (1954); *Greenwald v. Workmen's Compensation Appeal Bd.*, 61 Pa. Commw. Ct. 34 (432 A2d 1133) (1981); and *Stacey v. Carnegie-Ill. Steel Corp.*, 156 Ohio St. 205 (101 NE2d 897) (1951), is equally misplaced, those cases involving situations where no *obvious* causal relationship existed between the accident alleged and the injury suffered.

2. Our holding in Division 1, supra, renders moot Grady's remain-

ing argument that the optometrist's testimony was insufficient as a matter of law to carry claimant's burden of proof as to causation in the face of contrary testimony by the ophthalmologist. We pause to note, however, that unlike the situation in the case cited by Grady, *American Enka Corp. v. Sutton*, 216 Tenn. 228 (391 SW2d 643) (1965), the optometrist in the case at bar offered no testimony as to the cause of claimant's loss of vision, notwithstanding the invitation to do so on cross-examination by Grady. The optometrist's "expert" testimony in this case did not extend beyond the scope of his professional expertise as provided by law, i.e., his diagnosis of claimant's visual acuity. See OCGA § 43-30-1 (2).

*Judgment affirmed. Deen, P. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED APRIL 8, 1985.

*Scott R. Owens*, for appellant.
*Henry M. Kellum*, for appellee.