### 73492. ITT-CONTINENTAL BAKING COMPANY et al.
### v. POWELL.
(356 SE2d 267)

BEASLEY, Judge.

We granted ITT's application for discretionary review of the trial court's affirmance of a workers' compensation award to claimant Powell.

Claimant's duties required prolonged standing on a concrete floor. Because of swelling and pain in his feet, claimant consulted a podiatrist not on the employer's list of approved physicians. When the problems worsened claimant left his employment on June 9, 1984, and had surgery on June 19. He returned to work in September, having filed a claim for medical insurance, but then at the end of November he notified ITT that he wished to file a workers' compensation claim.

ITT filed a WC-1 form (Employer's first report of injury) with the Board on December 21. It contained a notice to controvert which recited that "Mr. Powell's present disability is the result of a congental [sic] defect and is unrelated to his employment with Continental Baking."

The ALJ found: Shortly after he began work as an oven operator with ITT, claimant noticed his feet were gradually getting worse. His supervisor noticed he was limping with increased frequency. Claimant told his supervisor that his feet had bothered him for a long time but he had begun to limp after starting work. The supervisor told claimant to see a doctor. Subsequently claimant told his supervisor that prolonged standing on concrete caused his feet to swell and he was to have surgery on June 9, 1984. When claimant returned to work on September 8, he changed jobs to dough mixing at a higher wage and regular hours. After his discharge on March 24, 1985, claimant related he had problems with his feet in that he was unable to bend his toes and thus perform any work requiring him to bend or squat.

Claimant's podiatrist found multiple medical problems with his feet. The podiatrist's opinion was that claimant's conditions were pre-existing and became worse with time, and that prolonged weight bearing on concrete surfaces hastened the onset of pain. A doctor for ITT testified that it was not clear whether claimant's employment caused the foot pain but it did not cause his foot deformity. The doctor questioned the use of surgery rather than conservative methods and stated he did not think there was any clearcut medical opinion as to whether a short history of working on concrete floors would justify foot surgery or workers' compensation coverage.

Based on these facts, the ALJ found claimant sustained a compensable injury on June 9 and that he underwent a further change of condition from ability to work to total disability on March 24, 1985.

Claimant was awarded medical benefits for the services of his podiatrist as well as income benefits from June 9 to September 8, 1984, and from March 24, 1985, until terminated by law. The full board adopted the ALJ's findings and added that "claimant's inability to secure suitable employment after March 24, 1985, was caused by his compensable injury."

ITT posits three grounds for its position that the superior court erred in affirming the award: 1) claimant's condition did not arise out of and in the course of his employment and thus he did not suffer a compensable injury; 2) claimant used a physician not on the panel, relieving ITT of responsibility for medical expenses; 3) claimant was not entitled to disability benefits after his termination because there was no evidence that he was unable to secure employment due to his alleged foot condition.

1. Discretionary review was not granted to reexamine the any evidence rule or the principle that an employer takes his employee as it finds him and assumes the risk of a diseased condition aggravated by injury. *Colonial Stores v. Hambrick*, 176 Ga. App. 544, 545 (3) (336 SE2d 617) (1985). Since there was some evidence that claimant's preexisting condition was aggravated by his job, the award of income benefits from June 9 to September 8, 1984, will not be disturbed. *Home Indem. v. Brown*, 141 Ga. App. 563, 566 (2) (234 SE2d 97) (1977); *Home Ins. Co. v. McEachin*, 151 Ga. App. 567 (260 SE2d 560) (1979).

2. The medical expenses are not ITT's responsibility. Claimant made no effort to select from the panel of physicians but chose his doctor and used his services before the filing by employer of a notice to controvert. *State of Ga. v. Tungler*, 181 Ga. App. 21 (351 SE2d 248) (1986) is controlling. Accord *Ledbetter v. Pine Knoll Nursing Home*, 180 Ga. App. 654, 656 (2) (350 SE2d 299) (1986).

Initially, claimant argued that since the employer ITT controverted the claim it could not restrict his choice of physicians under *Boaz v. K-Mart Corp.*, 254 Ga. 707 (334 SE2d 167) (1985). *Tungler* distinguished *Boaz* on the fact that in *Tungler*, notice to controvert was given *after* the employee's choice of physicians. Of course, if within 21 days after knowledge of the injury the employer files a notice to controvert the claim, then from that point forth the employee may select any physician he chooses and the employer need give no further notice that it will not pay medical expenses.

By supplemental brief, claimant changed tack, pointing out that the employer failed to file a notice to controvert within 21 days of notice of the accident. From that premise it is argued that the employer should not be allowed to question claimant's selection of a physician. This argument overlooks that the primary effect of the notice to controvert is on the payment of income benefits.

A distinction must be recognized between income benefits and medical expenses. Income benefits are to be paid automatically once the employer is notified of the injury, unless the employer in return informs the employee by means of a notice to controvert that in its view the injury is not compensable as not arising out of and in the course of the employment, etc. OCGA § 34-9-221.

Employer-liable medical expenses, on the other hand, initiate with the services of a physician selected from the approved list (except when justified otherwise) as required by OCGA § 34-9-201 (c). When the expenses arise from treatment by one not on the approved list, nothing would trigger a decision to pay these expenses or controvert liability for them until the employer is informed of their incurrence.

This fundamental difference between the two types of claims and how they mature is illustrated by a typical example. An employee is injured on the job and notifies the employer who, since the injury is job-related, begins to pay income benefits while the employee is absent from work. OCGA § 34-9-221. Sometime later the employee is operated on by a physician not on the list. The employer still continues to pay disability income benefits. The employee then seeks payment of his medical expenses from the employer. At this point, the employer would inform the employee of its refusal to pay such medical benefits, on the ground that it is not responsible for them because the expenses did not originate with a listed physician (OCGA § 34-9-201 (c)). This would not affect the employer's continuance, or refusal to continue, the payment of income benefits.

Rule 221 (d) of the Workers' Compensation Board provides: "To controvert in whole or in part the right to income benefits or other compensation, use Forms WC1 or WC3." Even if an employer is required to notify the board of its refusal to pay medical expenses, it is not a statutory requirement as the statutory scheme regarding time constraints for a "notice to controvert" — the 21-day period after knowledge of the injury of OCGA § 34-9-221 (d) and the "within 60 days of the due date of the first payment of compensation" of OCGA § 34-9-221 (h) — relates solely to income benefits. As we have endeavored to illustrate, an employer cannot be expected to refuse to pay an unapproved medical expense until a request for payment is made. This event may occur a considerable time later than 21 days after knowledge of the injury or 60 days of the first payment due date; it varies from case to case. Only from the time it learns that payment is sought would the employer have any obligation to respond.

Based on claimant's actions here, the employer had no reason to assume that claimant was seeking workers' compensation *medical* benefits. Its failure to file a notice to controvert earlier does not preclude it from denying responsibility for medical services from a physi-

cian not on the posted panel. The Board erred in awarding medical expenses.

3. The composite finding of the ALJ and the Board was that claimant was unable to perform any job requiring him to bend or squat and that his inability to secure suitable employment after March 24, 1985, was caused by his compensable injury.

The claimant was not discharged for any reason relating to his injury. In fact, claimant stated that he was terminated because one of his foremen said he was drunk. He denied being intoxicated.

"It is well settled that where an employee returns to work following a disabling injury and is then discharged for a cause unrelated to the injury, he is entitled to receive benefits for loss of earning capacity if he is unable to find other employment because of his disability." *Gilmer v. Atlanta Housing Auth.*, 170 Ga. App. 326, 327 (316 SE2d 535) (1984). Where an employee seeks resumption of his disability income benefits following his job termination "the only relevant 'change of condition' is a change in the employee's 'wage-earning capacity,' not in his physical condition . . . The requisite economic change in condition exists when the employee is able to demonstrate that, as a proximate result of his previous work-related injury, he is unable to secure suitable employment elsewhere." *Ga. Power Co. v. Brown*, 169 Ga. App. 45, 48-49 (311 SE2d 236) (1983). Accord *J & M Transp. Co. v. Crowe*, 173 Ga. App. 13, 14 (1) (325 SE2d 412) (1984). The claimant has the burden of establishing this. *Hartford Accident &c. Co. v. Bristol*, 242 Ga. 287, 288 (248 SE2d 661) (1978).

The Board made a conclusionary finding that claimant's inability to find suitable employment was caused by his injury. No facts sustain that conclusion and it must be reversed. There is no showing that claimant was in any way unable to find suitable work, that work was unavailable, or that he made any effort to discover the status of the job market.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Deen, P. J., concur. Sognier, and Pope, JJ., concur in the judgment only. Carley, J., concurs in Divisions 1 and 2 and dissents as to Division 3. McMurray, P. J., Banke, P. J., and Benham, J., dissent.*

BENHAM, Judge, dissenting.

1. I am unable to agree with the majority ruling that ITT is not responsible for the medical expenses sought by the appellee because he made no effort to select from a panel of physicians provided by the employer in accordance with OCGA § 39-9-201. There was no evidence of record to show that such a list was posted in a prominent place or that ITT complied with the other requirements of OCGA § 34-9-201 (b). Compare *Dairymen, Inc. v. Wood*, 162 Ga. App. 430 (4) (291 SE2d 763) (1982). "[I]f the employer does not adequately meet

the duty of providing treatment the employee may make other arrangements and once treatment by a physician is undertaken an employer may not change positions and cut off the right to continue such treatment. [Cit.]" *Boaz v. K-Mart Corp.*, 254 Ga. 707, 710 (334 SE2d 167) (1985).

Moreover, if an emergency or "other similarly justifiable reason" exists, under OCGA § 34-9-201 (c) the selection requirements are not applicable. The evidence was undisputed that appellee was advised to "see a doctor" by his supervisor when his worsening condition became apparent, that he did so and was treated. After the ALJ awarded medical benefits for such treatment, appellants complained for the first time on their appeals to the board and the superior court that the ALJ had not considered "the entire issue of whether [appellee's doctor's] medical treatment was authorized." However, at no time did appellants submit any evidence to show *how* or *why* appellee's choice of a doctor or his treatment was not authorized, either before or after the finding of the ALJ that appellee was entitled to an award of his medical expenses, arguing on appeal only that it *was* not. Appellants' notice to controvert was based solely upon the alleged noncompensability of his injury.

While the majority states that appellee "made no effort to select from the panel of physicians," it could also be said in the absence of any evidence to the contrary that ITT made no effort to adequately meet its duty of providing treatment. In my view, the burden should be placed upon the employer to show that it complied with the requirements of OCGA § 34-9-201 before it can assert the employee's noncompliance as a defense to the claim. See generally *Firestone Tire &c. Co. v. Crawford*, 177 Ga. App. 242 (3) (339 SE2d 292) (1985); *Cornell-Young v. Minter*, 168 Ga. App. 325 (309 SE2d 159) (1983). Such a construction is necessary to effectuate the humane purposes for which the Workers' Compensation Act was enacted. Cf. *Schwartz v. Greenbaum*, 236 Ga. 476 (1) (224 SE2d 38) (1976); *Wilson v. Manville Bldg. Materials Prods.*, 179 Ga. App. 408, 410 (346 SE2d 851) (1986). Thus I must dissent from the holding in Division 2 of the majority opinion.

2. The ALJ found that appellee was employed on February 11, 1984, and that, shortly thereafter, appellee noticed that his feet were swelling and getting worse; that the supervisor noticed appellee was limping and the limping was happening more frequently; that appellee told the supervisor that prolonged standing on concrete caused his feet to swell and he had to have surgery on June 9, 1984; that appellee returned to work on September 8, 1984, was given the job of dough mixing and performed normal duty work; that appellee was discharged on March 24, 1985, and presently has foot problems and is unable to perform any job that requires bending or squatting. After

reviewing the reports of appellee's treating physician and the doctor employed by appellants for an independent medical evaluation, the ALJ concluded that appellee had sustained a compensable injury on June 9, 1984, at which time he became totally disabled. He further found that appellee underwent a change for the better when he returned to work after the foot surgery, but then incurred a change in condition from ability to work to total disability as of March 24, 1985, at which time he was discharged, and still suffered from the residual effects of his surgery. The full board reviewed the claim, adopted the ALJ's findings of fact and conclusions of law, and made his award the award of the board. The superior court found evidence to support the findings and conclusions, and affirmed the award of the board.

Review of the record before this court on appeal convinces me that there was sufficient evidence to support the award of income benefits. "The issue on appeal to the superior court is whether there is any evidence to authorize a finding in accordance with the contentions of the prevailing party before the Full Board. The rule is that the decision of the trier of fact will not be set aside on appeal if there is any evidence to support the finding. The Full Board's findings of fact are not to be set aside because the reviewing court disagrees with the conclusions drawn therefrom. When using the any evidence criteria, the facts are to be construed in a light most favorable to the party prevailing before the board. Reviewing courts do not consider the weight of evidence. [Cit.] With the foregoing standards of appellate review in mind, we turn to the facts of this case. The issue is simply whether or not there is *any* evidence to support the finding of the ALJ and the board that the claimant is incapable of doing whatever bending or stooping is required by the lighter duty job . . . . *Holloway v. Lo-Temp*, 180 Ga. App. 513, 514 (349 SE2d 534) (1986). Although [appellants] presented medical evidence to the contrary, we find sufficient record evidence to support the Full Board's award in claimant's favor. [Cits.] Questions as to credibility and preponderance address themselves to the trier of facts. On appeal, the appellate tribunal does not determine the credibility of witnesses or the preponderance of the evidence. The appellate tribunal utilizes the any evidence test, a test not available to the trier of facts in deciding disputed factual issues. This court and the superior court are bound by the findings of the Board supported by any evidence. [Cit.]" Id. at 515. Accord *Fulton-DeKalb Hosp. Auth. v. Hadley*, 174 Ga. App. 503 (1) (330 SE2d 432) (1985); *Walton County Bd. of Commissioners v. Williams*, 171 Ga. App. 779 (320 SE2d 846) (1984). I therefore also disagree with the ruling of the majority in Division 3, that there was no evidence to support the finding of the board that appellee's inability to find suitable employment was caused by his injury. Accordingly, I also respectfully dissent from Division 3.

I am authorized to state that Presiding Judge Banke and Presiding Judge McMurray join in this dissent. Judge Carley joins in this dissent as to Division 3 of the majority opinion.

DECIDED MARCH 20, 1987 —
REHEARING DENIED APRIL 3, 1987 — 

*Daniel C. Kniffen,* for appellants.
*John M. Strain,* for appellee.