70493. UNIVERSAL CERAMICS, INC. et al. v. WATSON.
(339 SE2d 304)

POPE, Judge.

On November 13, 1981 while employed by appellant, claimant-appellee Watson suffered an on-the-job injury which resulted in the amputation of his left arm. At the time he was injured, claimant worked in the maintenance section for $4.50 per hour. On May 11, 1982 claimant returned to appellant's employ performing a job in the stock room for $3.78 per hour. The job had been specially created for claimant by his rehabilitation nurse in cooperation with the management of appellant. By award dated June 29, 1982, the State Board of Workers' Compensation approved a lump sum payment of $18,586.94 to claimant for 90 percent permanent partial disability to his left arm. On August 11, 1982 claimant quit working for appellant.

After a January 4, 1983 hearing held at claimant's request, the Administrative Law Judge found, inter alia, that claimant left this job for treatment of a gastro-intestinal disorder which was aggravated by his anxiety in returning to work around the place where he was injured. Treatment for this gastro-intestinal problem resulted in a psychotic reaction with resulting psychiatric treatment. The ALJ found that due to this treatment, claimant was totally disabled to

work from August 11, 1982 until the date of the hearing on January 4, 1983. Further, claimant underwent a change in condition from total disability to no disability on January 4, 1983 at the hearing "when he again knew that work in keeping with his physical and mental condition was continually available for him." Based upon the disparity in salary suffered by claimant in his job as stock room attendant, the ALJ found partial economic disability from May 11, 1982 to August 11, 1982 and found $19.20 per week for that time due claimant. Also, appellant was ordered to pay claimant for total disability during the period of administration and recuperation for a nerve blockage scheduled for January 29, 1983. The portions set forth herein were adopted by the board with the addition of the following language in the award: "Employer/insurer is entitled to credit for overpayments of temporary total and temporary partial against any temporary total or permanent partial benefits to which claimant may become entitled in the future." No appeal was taken.

Claimant did not return to work for appellant. However, on October 24, 1983 he attempted to return to the stock room job but it had been abolished. Upon the request of claimant a hearing was held to determine his change in condition.

The ALJ took judicial notice of the prior awards and found that from January 4, 1983 when the stock room job was available to him to October 24, 1983, claimant had no disability. However, when the stock room job was no longer available on October 24, 1983, claimant suffered a total inability to work until February 14, 1984 when he found employment as a security guard at a salary of $3.35 per hour. On February 14, 1984 the claimant underwent a change in condition from total inability to work to partial disability because he was paid at a reduced hourly rate in his job as a security guard. The claimant was, thus, awarded income benefits for total disability from October 24, 1983 to February 14, 1984 and partial disability benefits from February 14, 1984 until terminated by law. Further, the ALJ's award stated: "The employer/insurer are authorized to take credits for overpayments of temporary total and temporary partial disability benefits as outlined in the Full Board's award [set forth supra]." The ALJ's award was adopted and made the award of the board. The superior court affirmed the board's award. Appellant's application for discretionary appeal was granted by this court.

1. Appellant asserts that the superior court erred in affirming the board's award because the ALJ's first award is res judicata as it "is premised on a complete medical cure." Thus, appellant argues, benefits "may only be re-instated upon a showing of a physical change for the worse." We find this enumeration to be totally without merit, lacking support in either the facts or the applicable law. First, there is nothing in the 1983 ALJ's order as modified by the board to suggest

that claimant had been completely medically cured. While it is true that a basis of the first award was claimant's gastro-intestinal disorder, it is equally so that this disorder was aggravated by his anxiety in returning to the place of his injury. Appellant apparently overlooks the facts that the injury suffered by claimant was the amputation of his left arm and that the ALJ also authorized benefits for the nerve blockage scheduled to be done on the remainder of claimant's arm. Moreover, the real basis for this award was the availability of suitable work on January 4, 1983. With this in mind, it is difficult to understand appellant's claim that the first award found claimant to be completely medically cured.

2. In a second, but related, enumeration of error, appellant contends that an employer is not perpetually responsible for keeping open an offer of suitable employment. We agree with appellant that under our present law an employer can support the termination of benefits based upon claimant's change in condition by showing that the claimant is able to return to work albeit with restrictions and that work suitable to claimant's restrictions is available to him. See *Peterson/Puritan, Inc. v. Day*, 157 Ga. App. 827 (278 SE2d 674) (1981). The opinions in *Pierce v. AAA Cabinet Co.*, 173 Ga. App. 463 (326 SE2d 575) (1985), and *Williams Bros. Lumber Co. v. Magee*, 162 Ga. App. 865 (292 SE2d 477) (1982), are wholly inapposite to the factual posture of this case because claimant herein had not fully recovered from the on-the-job injury. In other words, he still had physical restrictions on the work he could perform. Compare *Pierce*, supra. There is further no finding that claimant's restrictions or remaining physical disability was caused by an intervening accident after he had recovered from the on-the-job injury. Compare *Williams Bros.*, supra.

In the case before us now, it is unquestionable that claimant has and will, in all likelihood, always have some restrictions on the type of work he can perform due to the amputation of his left arm. The standards of *Peterson/Puritan*, supra, are, therefore, applicable, as is OCGA § 34-9-240 which provides: "If an injured employee refuses employment procured for him and suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the board such refusal was justified." The board, in adopting and affirming the most recent award of the ALJ, complied with the foregoing by declining to direct that benefits be paid to claimant during the period of his refusal, from January 4, 1983 when the stock room job was available to him until October 24, 1983 when the job was no longer available. Claimant's refusal to accept the stock room job during this period does not preclude the board's finding of disability and award of benefits as of October 24, 1983, the date when his refusal ended.

" 'When an employer procures a light job which an injured em-

ployee can perform and the employee refuses the job, (OCGA § 34-9-240) . . . requires that compensation be suspended only "during the continuance of such refusal." The refusal does not forever ban receipt of future compensation should the availability of suitable light work cease.' *Liberty Mutual Ins. Co. v. Neal*, 140 Ga. App. 585, 586 (231 SE2d 574) (1976); *Argonaut Ins. Co. v. Marshall*, 144 Ga. App. 217 (240 SE2d 767) (1977). The employer unequivocally stated at the hearing that the offer of [the stock room job] no longer existed." *Coats & Clark v. Thompson*, 166 Ga. App. 669, 670 (305 SE2d 415) (1983). Since the stock room job was not available to claimant as of October 24, 1983 and, although appellant employed a security guard this position was not made available to claimant, the most recent award of the ALJ as adopted by the board was correct in finding claimant's change in condition between October 24, 1983 and the date of his employment with another employer on February 14, 1984.

3. Appellant's final two enumerations of error raise the propriety of awarding claimant benefits for temporary total disability (see OCGA § 34-9-261 (a)) for the period of October 24, 1983 to February 14, 1984 as well as benefits for temporary partial disability (see OCGA § 34-9-262 (a)) in light of the lump sum payment to claimant approved by the board on June 29, 1982. Although claimant argues that the lump sum award is unclear as to the reason it is being paid, his application for the lump sum payment makes it clear that the lump sum payment of $18,586.94 was made to him for 90 percent permanent partial disability to his left arm. Pursuant to OCGA § 34-9-263, this rating translates into 202.5 weeks of permanent partial disability benefits.

As we explained in Divisions 1 and 2, supra, the most recent award of the ALJ, as affirmed by the board and the superior court, when considered standing alone, is legally and factually supportable. See OCGA §§ 34-9-261 and 262; see generally *Augusta Coca-Cola Bottling Co. v. Carter*, 172 Ga. App. 195 (322 SE2d 365) (1984); *Hensel Phelps Constr. Co. v. Manigault*, 167 Ga. App. 599 (2) (307 SE2d 79) (1983). However, appellant is correct that the award of temporary total disability benefits (OCGA § 34-9-261) and temporary partial disability benefits (OCGA § 34-9-262) in addition to the previously awarded lump sum permanent partial disability benefits is improper. Benefits under OCGA § 34-9-263 for permanent partial disability (specific member disability) are not recoverable so long as claimant remains entitled to benefits under OCGA § 34-9-261 or OCGA § 34-9-262. See OCGA § 34-9-263 (b) (3); *Benton v. U. S. Cas. Co.*, 118 Ga. App. 804 (165 SE2d 473) (1968); Hiers & Potter, Ga. Workers' Compensation — Law & Practice § 17-6, p. 184 (1981). Because claimant has already collected the lump sum payment for permanent partial disability, he is not entitled to payment of the temporary total disa-

bility benefits and temporary partial disability benefits awarded by the board and affirmed by the superior court. OCGA § 34-9-104 (e) provides: "Where a lump sum payment . . . has been made to an employee under Code Section 34-9-222 and a subsequent change in condition is found to have occurred, the employer shall be entitled to credit against future income benefits equal to the amount of the lump sum. . . . This shall be accomplished by reducing the period of future weekly income benefits or by reducing the weekly benefit, or both." Although the award at issue makes provision that appellant take credit for overpayments, the method of crediting the overpayment is not set forth with sufficient specificity. As the award stands now, it must be reversed. Without clarification of the method of crediting the overpayment under OCGA § 34-9-104 (e), the award authorizes a prohibited duplication of benefits. Therefore, we reverse and direct that the award be remanded to the board only for the purpose of specifying the method to be used in crediting appellant for overpayments as set forth in OCGA § 34-9-104 (e). See *Edgeman v. Organic Chemical Corp.*, 173 Ga. App. 4 (2) (325 SE2d 400) (1984); *Georgia Mental Health &c. v. Padgett*, 171 Ga. App. 353 (319 SE2d 524) (1984).

*Judgment reversed with direction. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 27, 1985 —
REHEARING DENIED DECEMBER 11, 1985.

*Mark S. Gannon, Benjamin H. Terry*, for appellants.
*Miles L. Gammage, Jr.*, for appellee.