A93A0437. WATSON v. UNIVERSAL CERAMICS, INC. et al.
(433 SE2d 104)

BLACKBURN, Judge.

This is the second appearance of this case before this tribunal.[1] The appellant, James W. Watson, sustained a work-related injury to his left arm on November 13, 1981, which resulted in the amputation of the arm below the elbow. Thereafter, he was fitted for and used a prosthetic device. However, since his amputation, he has continued to experience a generalized pain syndrome involving the stump of the

---

[1] In *Universal Ceramics v. Watson*, 177 Ga. App. 345 (339 SE2d 304) (1985), we remanded this case to the State Board of Workers' Compensation for the purpose of specifying the method used to provide the employer, Universal Ceramics, and its insurer, Commercial Union Insurance Companies, with credit for the overpayment of income benefits made to the employee, James Watson.

arm. Watson has been paid income benefits by the appellees, Universal Ceramics, Inc. (Universal), his employer, and Commercial Union Insurance Companies, Universal's workers' compensation insurance carrier, including a lump sum payment of permanent partial disability benefits based on a 90 percent physical impairment to the arm. Watson was last paid income benefits on March 11, 1986.

Shortly after the injury, Watson left the employ of Universal and worked as a security guard for employers during successive periods of time. He was last employed on August 9, 1989, at which time he was terminated as a result of his inability to perform his work duties with his right hand due to a developing arthritis condition. On September 15, 1989, Watson requested a hearing before an administrative law judge (ALJ) for a determination of whether he had undergone a change in condition, warranting the recommencement of income benefits, and the payment of attorney fees and penalties. On January 11, 1990, the ALJ, based upon his observations of Watson at the administrative hearing, found that Watson suffered a total amputation of his arm, resulting in a 100 percent impairment of the member, entitling him to an additional 10 percent in permanent partial disability benefits. The ALJ concluded that Watson's claim for additional benefits was not barred by the two-year statute of limitation in OCGA § 34-9-104 (b) because Watson was due additional benefits at the time that he filed his claim on September 15, 1989. The award of the ALJ was appealed to the State Board of Workers' Compensation (the Board), and a majority of the members of the Board reversed the decision of the ALJ, concluding that the claim was time barred. The superior court affirmed the decision of the Board, and we granted Watson's application for discretionary appeal.

In his sole enumeration of error, Watson contends that the trial court erred in concluding that his claim for additional benefits was time barred under OCGA § 34-9-104 (b). He asserts that the two-year statute of limitation was tolled based upon the exception that this court enunciated in *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154 (338 SE2d 742) (1985). We disagree.

The statute in effect at the time of Watson's injury, former Code Ann. § 114-709 (b), currently OCGA § 34-9-104 (b), provided that "any party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided that the prior decision of the board was not based on a settlement; and provided, further, that at the time of application *not more than two years have elapsed since the date of final payment of income benefits due under this chapter*." (Emphasis supplied.) See also *Holt's*, supra at 159. Although Watson contends that he was potentially due additional benefits, and therefore

the statute of limitation was tolled under *Holt's*, in *Justice v. R. D. C. Inc.*, 187 Ga. App. 198 (369 SE2d 493) (1988), we defined the term "potentially due" as enunciated in *Holt's*, supra. "In determining what is meant by 'potentially due' under *Holt's Bakery*, supra, this court held that 'potential' means 'not that the type of disability may arise in the future, but rather that there is evidence that it existed at the time although no claim was made for it.' *MARTA v. Ledbetter*, 184 Ga. App. 518, 519 (361 SE2d 878) (1987)." *Justice*, supra at 200.

In the present case, the evidence supports the Board's finding that the employee was not potentially due benefits at the time that he filed his claim for a change in condition in September 1989. In fact, the employee became unemployed approximately one month before the filing of his claim due to his admitted inability to perform his employment responsibilities due to the developing arthritic condition in his right hand. Although the employee has submitted evidence of a rating given by his treating physician as a result of a deposition held in response to the Board's remand of the case for additional evidence, and after his subsequent amputation, there is no evidence showing that Watson suffered from a loss of use of the member at the time of the filing of the September 1989 claim. Contrary to Watson's contentions, Dr. Alan Bowen, the physician who treated Watson following the accidental amputation and who performed the later surgical amputation on August 20, 1990, has indicated that the arm was functional after the first amputation. Although Watson had a second amputation of the arm above the elbow in August 1990, Dr. Bowen maintains that the arm is still functional, even after the above-the-elbow amputation, and that Watson does not have a 100 percent impairment in the use of the body member. However, we do recognize that Watson's impairment rating has increased after the second amputation. Unlike Watson, the employee in *Holt's* had been assigned a 20 percent permanent impairment rating at the time that she requested the change in condition hearing, and therefore, was potentially due additional benefits, warranting the tolling of the statute of limitation. It is undisputed that Watson was last paid income benefits in March 1986, and this claim for additional benefits was not filed until September 15, 1989, outside of the two-year time period provided in OCGA § 34-9-104 (b).

"The law is well established that a finding of fact by the (full board), when supported by any evidence, is conclusive and binding upon the court, and . . . neither the superior court nor the Court of Appeals has any authority to substitute itself as the fact finding body in lieu of the board." (Citations and punctuation omitted.) *Jarallah v. Pickett Suite Hotel*, 204 Ga. App. 684, 686 (420 SE2d 366) (1992). There is some evidence to support the Board's finding that Watson was not potentially due additional benefits at the time that he filed

his claim for benefits outside of the two-year time period provided in OCGA § 34-9-104 (b), and accordingly, we are bound to conclude that the decision of the Board was properly affirmed by the trial court.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 23, 1993.

*Mundy & Gammage, Miles L. Gammage*, for appellant.
*Savell & Williams, John M. Williams*, for appellees.