65351. HENSEL PHELPS CONSTRUCTION COMPANY et al.
v. MANIGAULT.

CARLEY, Judge.

Appellee-employee, a construction worker, was injured in an on-the-job accident on March 29, 1979. Appellee received a fractured left ankle and underwent surgery. Pursuant to OCGA § 34-9-261 (formerly Code Ann. § 114-404), appellee began to receive workers' compensation income benefits for temporary total disability as of

April 1979. On March 24, 1980, the Board-approved physician treating appellee indicated that appellee "could return to light duty if he did not have to stand or walk with his foot all day, if he were in a position where he could be up and down[,] have some sitting and some standing and some walking without having to carry excessive loads he should be able to work. At the current time . . . [appellee] has a 10% impairment of the left foot and ankle due to his work related injury."

In April of 1980, appellee was examined by another physician. At approximately the same time, appellee also filed a request with the Board seeking a change in physicians pursuant to OCGA § 34-9-200 (Code Ann. § 114-501). This examination demonstrated, in the opinion of the physician, that appellee had "reached maximum medical improvement, with permanent partial disability . . . [H]e is capable of seeking gainful employment, but more than likely it should be a more sedentary type job [than construction work]." In May of 1980, appellee's request for a change in physicians was denied by the Board.

On October 29, 1980, appellee returned to his original Board-approved physician. For the first time, appellee complained about back problems. Although requested to do so, the appellant-insurer would not authorize the physician to make an evaluation of appellee's back problem so as to determine if it was related to the original ankle injury. With regard to the ankle injury itself, the physician did determine that appellee had a permanent disability consisting of a "15% impairment of the left lower extremity" and released him as being "able to return in some type of construction work, but would recommend that he avoid working on ladders doing a lot of climbing because of restriction of movement of his ankle."

On November 11, 1980, appellee requested the Board to hold "a hearing for a change of physician at the earliest possible date." The basis for this request was stated to be the refusal of appellant-insurer "to allow the authorized treating physician to treat [appellee] for his back problem . . ." This request also noted that the "date of the injury" was August 7, 1980. The Board wrote back to inform appellee that it had no "report of accident filed by the employer or any document which admits or accepts liability for the accident of August 7, 1980, as workers' compensation. Until liability is established, the Board has no jurisdiction to act upon the matter."

On December 3, 1980, appellee again wrote the Board, this time requesting a hearing "to show cause why treatment should not be provided for additional job-injury-related medical problems at the expense of the employer/insurer." This letter stated that the relevant

"date of the injury" was the original March 29, 1979, accident.

A hearing was held in January of 1981. Although appellants had filed no application pursuant to OCGA § 34-9-104 (Code Ann. § 114-709) for a determination of appellee's change in condition, when the administrative law judge (ALJ) asked at the outset if one of the purposes of the hearing was to determine a change in appellee's condition, appellants' counsel responded in the affirmative and no objection was raised by appellee's counsel. A hearing was then conducted, wherein it appears that appellants' sole contention regarding appellee's "change in condition" was that he was able to return to work and accordingly that his income benefits under OCGA § 34-9-261 (Code Ann. § 114-404) should be terminated.

The ALJ subsequently entered an award which denied appellee's request for a change of physician and which also denied appellants' "request" for a determination of a change in appellee's condition. Accordingly, the ALJ ordered appellee to continue in the care of his Board-authorized physician and further ordered appellants "to continue compensation payments for total disability... as authorized by [OCGA § 34-9-261 (Code Ann. § 114-404)] and to provide authorized medical treatment pending further order of the Board."

The Full Board, with one dissent, adopted the ALJ's finding and conclusions, making his award that of the Full Board. On appeal to the superior court, the award of the Full Board was affirmed. Appellants' application for a discretionary appeal from the affirmance of the award by the superior court was granted by this court.

1. The award of the ALJ, as adopted by the Full Board, contains the following relevant finding: "I find as a matter of fact from consideration of the testimony and medical evidence in this case that [appellee] has failed to justify his request for a change of physicians, as the Full Board has previously denied this request and subsequent evidence does not indicate a contrary decision. *[Appellee] is to see [his original Board-authorized physician] as needed and/or to determine if his back injury is job-related* and the expenses for unauthorized medical would be the responsibility of [appellee] and only authorized medical would be the responsibility of the [appellants.]" (Emphasis supplied.)

Both the appellants and appellee assert that the award was, in its above emphasized portion, erroneous. The mutual contention is that such an award was an erroneous deferral to appellee's physician of the Board's fact-finding responsibility with regard to whether appellee's purported back injury was job-related and disabling. However, appellants' and appellee's agreement that error occurred in

this regard fails to take into account that the issue of whether appellee's back problem was job-related and a compensable disabling injury was *not* before the Board for determination. At the time of the hearing, appellee was *already* receiving — as a result of his work related leg injury — maximum workers' compensation benefits pursuant to OCGA § 34-9-261 (Code Ann. § 114-404) in the form of income disability benefits. Appellee was entitled to continue to receive these benefits until such time as there was a change in his condition. See generally *Hartford Acc. & Indem. Co. v. Webb,* 109 Ga. App. 667 (137 SE2d 362) (1964). It is clear that the question of appellee's back problem arose solely in the context of appellant-insurer's refusal to authorize even a diagnosis of that physical complaint for a preliminary medical determination of whether it was the result of appellee's admitted work-related leg injury. Accordingly, it is clear that the Board's award relating to appellee's back condition was merely a determination that appellee was at least entitled to have his back examined by his original Board-authorized physician pursuant to OCGA § 34-9-200 (Code Ann. § 114-501) as part of his workers' compensation *medical* benefits. We find nothing improper or erroneous in this ruling. "The medical expenses were all reasonably required in order to make an intelligent and factual disposition of the claim under our [Workers'] Compensation Law. Being reasonably required, the board was authorized to order the employer to make payment for these expenses. [OCGA § 34-9-200 (Code Ann. § 114-501)]." *Roberson v. Hartford Acc. & Indem. Co.,* 141 Ga. App. 558, 558-559 (234 SE2d 145) (1977). The underlying compensability of the back problem was not before the Board, only the issue of whether the medical determination of its causation should be made by the Board-authorized physician already treating appellee for his leg injury.

The superior court did not err in affirming an award to the effect that appellee was to continue to see his original Board-approved physician "as needed and/or to determine if his back injury is job-related."

2. Appellants further assert that the award was erroneous because it failed to find that there had been a change in appellee's condition. We note at the outset that appellants' statement in its brief that the hearing was called at their request to determine this issue is not borne out in the record. It appears that the hearing was called solely at the December 3, 1980 request of appellee "to show cause why treatment should not be provided for additional job-injury-related medical problems at the expense of the employer/insurer" and no written request by appellants for a hearing

on the issue of appellee's change of condition appears in the record. However, "this court has held that the board may, on its own motion, enter an award stating that a change of condition has occurred, regardless of the stated purpose of the hearing. [Cit.]" *Maryland Cas. Co. v. Johnson,* 126 Ga. App. 468 (2) (191 SE2d 90) (1972). Accordingly, we cannot say that the issue of appellee's change in condition was not properly before the Board.

Appellants' change of condition argument is that the evidence demanded a finding that appellee's condition had changed from temporary total disability — compensable under OCGA § 34-9-261 (Code Ann. § 114-404) — to permanent partial disability — compensable under OCGA § 34-9-263 (Code Ann. § 114-406) — and that the Board erred in failing to so find. Pretermitting that appellants apparently always sought from the Board only a *termination* of appellee's temporary total income benefits and never specifically raised the issue of a *change* in appellee's benefits to permanent partial, we will address appellants' argument that the record would demand a finding that appellee's benefits should have been so changed.

Appellee was already receiving income benefits pursuant to OCGA § 34-9-261 (Code Ann. § 114-404) and, as noted above, was entitled to receive such benefits until there was a change in his condition from that of temporary total disability. The basis upon which the Board found that appellants had not met their burden of proving a change in appellee's condition was that "the availability of suitable work remains in conflict." Citing OCGA § 34-9-104 (a) (Code Ann. § 114-709), the new "change in condition" statute, appellants assert that, in the context of the instant case, the availability of suitable work has no bearing on appellee's change of condition, but rather a finding that such a change had occurred was demanded solely by the medical evidence that appellee's physical condition had changed to one of permanent disability consisting of "15% impairment of the left lower extremity." OCGA § 34-9-104 (Code Ann. § 114-709) defines "change in condition" as "a change in the wage-earning capacity, *physical condition* or status of an employee . . ., which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee . . . was last established by award or otherwise." (Emphasis supplied.)

While temporary total disability under OCGA § 34-9-261 (Code Ann. § 114-404) relates to impairment of earning capacity, permanent partial disability under OCGA § 34-9-263 (Code Ann. § 114-406) "relates to actual physical impairment, that is, loss or loss of use of specific body members or loss of use of the employee's whole body." Hiers and Potter, Ga. Workers' Compensation — Law and

Practice § 17-6, p. 184 (1981). OCGA § 34-9-263 (b) (2) (Code Ann. § 114-406) provides in relevant part that: "Income benefits [for permanent partial disability] shall not become payable so long as the employee is entitled to benefits under Code Section 34-9-261 (Code Ann. § 114-404) [for temporary total disability] . . ." As noted above, the compensation that appellee was receiving under OCGA § 34-9-261 (Code Ann. § 114-404) was for the temporary total impairment of his earning capacity. "The word 'disability,' as used in the act means impairment of earning capacity. [Cit.]" *Blue Bell Globe Mfg. Co. v. Baird,* 61 Ga. App. 298, 300 (6 SE2d 83) (1939). It is clear that, regardless of the percentage of an employee's physical disability, so long as he suffers a total impairment of his earning capacity he is "totally disabled" and entitled to income compensation benefits under OCGA § 34-9-261 (Code Ann. § 114-404). "Impaired earning capacity is not one involving a percentage of disability, but rather impairment that renders claimant unable to return to his regular employment or 'to procure remunerative employment at a different occupation suitable to his impaired capacity.' If the impairment prevents that return then his disability is total. [Cits.]" *Waycross Coca-Cola Bottling Co. v. Hiott,* 141 Ga. App. 600, 601 (234 SE2d 111) (1977). Since benefits under OCGA § 34-9-263 (Code Ann. § 114-406) for permanent partial disability are not payable so long as the employee is entitled to temporary total disability benefits under OCGA § 34-9-261 (Code Ann. § 114-404) and an employee is entitled to temporary total disability benefits under OCGA § 34-9-261 (Code Ann. § 114-404) so long as there is a total impairment of his earning capacity regardless of the percentage of his physical disability, it follows that mere evidence of a change in the employee's physical condition would not authorize, much less demand, a change in an employee's benefits from temporary total to permanent partial. In order to change an employee's benefits from those already being received under OCGA § 34-9-261 (Code Ann. § 114-404) to those authorized under OCGA § 34-9-263 (Code Ann. § 114-406), it would be necessary to show that the employee's earning capacity had changed and that he no longer suffered a total impairment of his earning capacity as the result of his work-related injury. This is but a corollary of the holding of *Peterson/Puritan, Inc. v. Day,* 157 Ga. App. 827, 829 (278 SE2d 674) (1981): "[W]e are convinced that neither the old Code Ann. § 114-709 nor any of the cases [decided thereunder] is inconsistent with the 'change of condition' language in [OCGA § 34-9-104], at least in cases where an employer seeks to terminate compensation because of the claimant's ability to return to work. To terminate compensation because of change in condition, the employer must show 'a change in

the wage earning capacity, physical condition or status of an employee' ([OCGA § 34-9-104 (Code Ann. § 114-709)]), and *to do so the employer must show the ability to return to work and that suitable work is available . . . [I]t may be that the employer is not required to show a specific job offer, but it is clear that it is not enough to show the claimant is physically able to work."* (Emphasis supplied.)

The evidence in the instant case did not demand a finding that suitable work was available to appellee and that the total impairment of his earning capacity resulting from his work-related injury was accordingly at an end. Instead, the evidence did authorize the Board's finding that appellants had not met their burden of proving that such work was available. See generally *Commercial Union Ins. Co. v. Weeks,* 155 Ga. App. 20 (270 SE2d 259) (1980); *Peterson/Puritan, Inc. v. Day,* supra. It follows that the superior court did not err in affirming the award which continued income benefits under OCGA § 34-9-261 (Code Ann. § 114-404) and which failed to change appellee's benefits to those authorized under OCGA § 34-9-263 (Code Ann. § 114-406).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED JULY 14, 1983 —
REHEARING DENIED JULY 28, 1983.

*Lawson A. Cox II, C. Wade McGuffey, Jr., Benjamin H. Terry,* for appellants.
*L. Paul Cobb, Jr.,* for appellee.