### 69800. CEDARTOWN NURSING HOME et al. v. DUNN.
(330 SE2d 905)

CARLEY, Judge.

On May 8, 1977, appellee-employee sustained an employment-re-

lated injury to her knee. She received workers' compensation in the form of temporary total disability income benefits until she returned to work on October 31, 1977. Upon appellee's return to work, she was paid reduced wages and, therefore, she began to receive temporary partial disability income benefits. She was still receiving those benefits on April 21, 1978, when she sustained an employment-related injury to her back. As the result of this back injury, she began receiving temporary total disability income benefits, and she has continued to receive those benefits to the present time. With regard to the temporary partial disability benefits that appellee had been receiving for her knee injury, the record demonstrates the following: A WC-4 form, dated "9/7/79," was filed with the State Board of Workers' Compensation, indicating that it was the appellant employer's and insurer's "final" report with reference to appellee's "injury date 5/8/77." The form further indicated that appellee had "returned to work 4/20/78," which was the day before she had injured her back, and that "the date of final weekly payment" of benefits for her knee injury had been "5/22/78." The form provided no space for appellee's signature as the claimant who had received this purported "final payment" of benefits for her knee injury. It is unclear from the record when the WC-4 form was actually filed with the Board. The Administrative Law Judge (ALJ) found that it had been filed on September 7, 1979, the date of its execution. The Board, on the other hand, found that the WC-4 form had been filed with it on November 26, 1979. Nevertheless, it is undisputed that the WC-4 final payment form had been on file with the Board for more than two years prior to appellee's initiation of the instant proceedings, in which she alleged a 15% disability rating as to her leg resulting from the original knee injury of May 8, 1977, and for which she sought specific member permanent partial disability benefits pursuant to OCGA § 34-9-263.

The ALJ concluded that appellee's claim was based upon a change of condition and that the two-year statute of limitation, former Ga. Code Ann. § 114-709, was applicable because the original knee injury occurred prior to July 1, 1978. See *Hart v. Owens-Ill.*, 250 Ga. 397 (297 SE2d 462) (1982). Finding that appellee's application for OCGA § 34-9-263 benefits based upon her knee injury had been brought more than two years after the WC-4 "final payment" form had been filed by appellants with the Board, the ALJ concluded that the statute of limitation had run. On appeal, the Board disagreed with the ALJ's analysis. It found that appellants' WC-4 form "was incomplete and prematurely filed since benefits due [appellee] for the 15% permanent partial disability have not been paid. Accordingly, since the Form WC-4 is incomplete and premature, the statute of limitation has not run on this claim." The Board then awarded appellee permanent partial disability benefits to commence "when she ceases

to receive [OCGA] § 34-9-261 benefits for the back injury she received subsequent to her leg injury."

On appeal to the superior court, the Board was affirmed as to the statute of limitation issue. However, the superior court also held that the Board had erred in failing to make its award of permanent partial disability benefits payable to appellee simultaneously with the temporary total disability benefits that she is currently receiving for her back injury.

Appellants applied to this court for a discretionary appeal from the order of the superior court. That application was granted and the instant appeal results.

1. Since the statute of limitation issue is potentially dispositive of the entire case, we will address that issue first.

Appellants contend that *Moore Business Forms v. Matthews*, 170 Ga. App. 106 (316 SE2d 552) (1984) is controlling and requires a holding that the applicable two-year statute of limitation had run in the instant case. A careful reading of the facts in *Moore Business Forms*, supra, demonstrates that there are significant differences between that case and the case at bar. In *Moore Business Forms*, supra, there existed a supplemental return to work agreement which was signed by the claimant and which was then filed with and approved by the Board *before* the notification of final payment was filed. No such supplemental return to work agreement exists in the instant case. This distinction in procedure is related to the second difference that exists between *Moore Business Forms*, supra, and this case. In *Moore Business Forms*, supra, the relevant preliminary events — the filing of the supplemental agreement and the notification of final payment — took place prior to July 1, 1978, the effective date of substantial fundamental changes in the Workers' Compensation Act. See Ga. L. 1978, p. 2220 et seq. The WC-4 form in the instant case was filed after July 1, 1978. Thus, the question becomes whether these distinctions require a different result in the case sub judice.

Former Ga. Code Ann. § 114-709 did *not* merely provide that the two-year statute of limitation for seeking a change of condition automatically began to run from the date that a document denominated as "notification of final payment" was filed with the Board. That statute provided that the two-year period would commence running "from the date that the board is notified that the final payment of a claim has been made *pursuant to a board order*. . . ." (Emphasis supplied.) Thus, an employer's mere *unilateral* filing of a notice that final payment had been made would not automatically terminate the employer's liability for an injury as established by a previous award of workers' compensation benefits. See *Coggins Granite Indus. v. Jones*, 129 Ga. App. 886 (201 SE2d 646) (1973). The contemplated notification was of *full satisfaction of and compliance with* the terms of the

Board's award of compensation, evincing the employer's final payment to the claimant of such benefits *as had been previously awarded by the Board.* Thus, the notification served to inform the Board that *its* award of compensation had been satisfied by the final payment of compensation pursuant thereto. "[A] decision or judgment of the compensation board . . . must be complied with until it is superseded by a new award. [Cits.] Until it is so changed or modified in the manner and way provided by the compensation Act, it has the same force and effect as the decision or judgment of any other tribunal known to our system of jurisprudence. [Cit.] The compensation Act contains no provision which automatically cancels an award which the board has made to an employee for a compensable injury; but it does make ample provision for a review of the award when there is a change in the condition of the employee. [Cit.] . . . So long as a judgment or decision of the board fixing disability benefits is permitted to stand as rendered, there is nothing for the courts to do but enforce it." *Guess v. Liberty Mut. Ins. Co.,* 219 Ga. 581, 582-583 (134 SE2d 783) (1964).

Under the pre-July 1, 1978 procedure, a Board-approved supplemental return to work agreement constituted a final change of condition award by the Board which authorized an *end* to a claimant's entitlement to compensation. Former Code Ann. § 114-709. Therefore, the employer's notification in *Moore Business Forms,* supra, was effective *only* because it was notification of the final payment of those compensation benefits that the Board had previously awarded to the claimant as the result of her injury. The filing of the notification of final payment of those previously awarded benefits was thus sufficient to begin the running of the two-year limitation period, after which the claimant could no longer seek to establish a change of condition so as to resume compensation for the injury.

The result in *Moore Business Forms* is in direct contrast to that in *Coggins Granite Indus. v. Jones,* supra. In *Coggins,* the employer's notification of final payment was *not* preceded by a Board-approved supplemental agreement authorizing discontinuation of compensation. Accordingly, liability for compensation benefits continued pursuant to the Board's unsuperseded award, the employer's unilateral filing of the notification of final payment being insufficient to terminate the continuing validity of that order. "Since . . . the employer's liability for payments under the approved agreement continued, notwithstanding the premature filing of the notice of final payment, such filing did not constitute notice of the making of final payment, which would have commenced the running of the two-year limitation in [former Code Ann.] § 114-709." *Coggins Granite Indus. v. Jones,* supra at 887-888.

From the above discussion, it is clear that the Board-approved

supplemental return to work agreement was vital to the holding in *Moore Business Forms*, supra. Although prior to July 1, 1978, the procedure of reaching a supplemental discontinuation of compensation agreement with appellee and then filing a notification of final payment pursuant thereto was available to appellants, they did not avail themselves of it. Likewise, there is no indication that appellants ever sought a change of condition hearing so as to secure an award superseding the Board's original order regarding appellee's knee injury, although the change of condition procedure was available both before and after July 1, 1978. Thus, on the record before us, the *final* order of the Board regarding appellee's knee injury states that she shall receive compensation "from and including the 6th day of August, 1977, and continuing during total incapacity." As discussed previously, this award established appellants' liability for workers' compensation benefits for the injury to appellee's knee "[u]ntil it [was] so changed or modified in the manner and way provided by the compensation Act. . . ." *Guess v. Liberty Mut. Ins. Co.*, supra at 582. Appellee's "right to apply for change of condition benefits is a substantive right which vested when she was injured on [May 8, 1977.]" *Hart v. Owens-Ill., Inc.*, supra at 399. It therefore follows that the instant case is controlled by *Coggins Granite Indus. v. Jones*, supra, rather than by *Moore Business Forms v. Matthews*, supra. The mere filing of a unilateral WC-4 form after July 1, 1978, is not sufficient to terminate an employer's liability for workers' compensation benefits, which liability was otherwise established by an award of the Board previous to that date. The superior court did not err in affirming the Board as to the statute of limitation issue.

2. Having determined that appellee's application for a change of condition and resumption of compensation benefits for her knee injury payable pursuant to OCGA § 34-9-263 is not barred by the applicable statute of limitation, we must now decide whether those benefits are payable simultaneously with the temporary total disability benefits that appellee is currently receiving pursuant to OCGA § 34-9-261 for her back injury.

"While temporary total disability under OCGA § 34-9-261 ([cit.]) 'relates to impairment of earning capacity, permanent partial disability under OCGA § 34-9-263 ([cit.])' relates to actual physical impairment, that is, loss or loss of use of specific body members or loss of use of the employee's whole body.' [Cits.]" *Hensel Phelps Constr. Co. v. Manigault*, 167 Ga. App. 599, 603 (307 SE2d 79) (1983). Thus, the question is whether appellee is entitled to receive simultaneous compensation for two separate employment-related injuries which have resulted in two separate and distinct losses to her. The injury to appellee's back has resulted in a loss of her earning capacity. "'Impaired earning capacity is not one involving a percentage of disability,

but rather impairment that renders claimant unable to return to his regular employment or "to procure remunerative employment at a different occupation suitable to his impaired capacity." If the impairment prevents that return then his disability is total. [Cits.]' [Cit.]" *Hensel Phelps Constr. Co. v. Manigault*, supra at 604. The injury to appellee's leg has resulted in a 15% permanent loss of use of her leg. Compensation for this loss is generally payable " 'irrespective of [appellee's] earning ability. . . .' [Cits.]" *General Motors Corp. v. Sligh*, 108 Ga. App. 354, 355 (133 SE2d 56) (1963).

In *Maryland Cas. Co. v. Mitchell*, 82 Ga. App. 439 (61 SE2d 506) (1950), the employee sustained an injury which resulted in a loss of use of his leg. He received permanent partial disability benefits therefor in the form of a lump sum settlement. Thereafter, he returned to work but was again injured in his employment, for which injury the Board awarded temporary total disability compensation. The award was affirmed by the superior court and, on appeal to this court, the issue for resolution was whether "an employee is . . . entitled to the payment of compensation for a permanent partial injury and temporary total disability for a second injury at the same time. . . ." *Maryland Cas. Co. v. Mitchell*, supra at 440. After considering the then-applicable statutes, this court concluded "that there is no provision of law which sustains the contention" that the employee could not receive simultaneous compensation for his two separate losses, the one physical and the other economic, which had resulted from his two separate employment-related injuries. *Maryland Cas. Co. v. Mitchell*, supra at 441.

3. Appellants attempt to distinguish the *Mitchell* decision on several grounds. First, they point to the fact that the employee therein had received the award of permanent partial benefits for the injury to his leg in a lump sum settlement. Thus, according to appellants, the subsequent award of temporary total disability benefits for the second injury did not result in the receipt of simultaneous compensation. However, the court in *Mitchell* expressly noted that the employee's second injury occurred "[d]uring the time within which he would have been entitled to receive weekly compensation [for the permanent partial leg injury] if there had been no lump sum settlement. . . ." *Maryland Cas. Co. v. Mitchell*, supra at 440. "The settlement of [an] entitlement by an approved lump-sum payment in no way eliminates the time period involved in the entitlement." *Argonaut Ins. Co. v. Wilson*, 119 Ga. App. 121, 123 (166 SE2d 641) (1969). Thus, considering that the specific issue addressed on appeal was whether the employee was entitled to receive compensation for both losses "at the same time," it is clear that *Mitchell* does constitute applicable authority as to the payment of OCGA § 34-9-263 benefits simultaneously with either OCGA § 34-9-261 or OCGA § 34-9-262

benefits when that payment is based upon the occurrence of two separately compensable injuries. *Georgia Mental Health Institute v. Padgett*, 171 Ga. App. 353 (319 SE2d 524) (1984), also relied upon by appellants, deals with a lump sum payment of compensation benefits for a single injury and accordingly has no application whatsoever to the instant case.

4. Appellants also urge that the holding in *Mitchell* is not controlling because there now exist "provision[s] of law which [sustain their] contention[s]. . . ." *Maryland Cas. Co. v. Mitchell*, supra at 441. In this regard, appellants first invoke OCGA § 34-9-263 (b) (2): "Income benefits due under this Code Section [permanent partial disability] shall not become payable so long as the employee is entitled to benefits under Code Section 34-9-261 or 34-9-262."

Initially, we note that there is considerable doubt as to whether the provisions of existing OCGA § 34-9-263 have any relevancy in the instant case, which involves a permanent partial disability arising from an injury occurring before its effective date. See *Hart v. Owens-Ill.*, supra at 398. However, even assuming the applicability of the existing statute, it is clear that its construction cannot be based upon a limited consideration of only the literal language thereof. Existing OCGA § 34-9-263 is but one part of a statute which also enacted existing OCGA § 34-9-241. This has a bearing on the applicable rules of statutory construction. "It is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part. It is not presumed that the legislature intended that any part would be without meaning. [Cit.]" *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975).

By its express terms, existing OCGA § 34-9-241 (a) relates to the specific topic of the receipt of simultaneous benefits in the case of two separately compensable injuries. Existing OCGA § 34-9-263, on the other hand, does not purport to relate to the payment of benefits for two employment-related injuries. Thus, existing OCGA § 34-9-263 is apparently intended as a part of the general statutory scheme relating to the compensability of a single employment-related injury (cf. *Bethlehem Steel Co. v. Dempsey*, 94 Ga. App. 408 (94 SE2d 749) (1956)), whereas existing OCGA § 34-9-241 (a) relates to the specific issue raised in the instant appeal. "Code sections relating to the same subject-matter and codified at the same time should be construed, if possible, to harmonize with each other, and that construction should be adopted which will prevent a contradiction by one section of the other, so that both will be operative. [Cits.]" *Mitchell v. Union Bag & Paper Corp.*, 75 Ga. App. 15, 17-18 (42 SE2d 137) (1947). Therefore, we construe existing OCGA § 34-9-263 (b) (2) as merely providing that an employee who suffers a single compensable injury shall not be

entitled to permanent partial disability benefits for that injury, so long as he would be entitled to receive temporary total disability or temporary partial disability benefits as the result of that same injury.

Existing OCGA § 34-9-241 (a), on the other hand, is a recodification of the language which comprised former Ga. Code Ann. § 114-409, which statute was in effect at the time of the decision in *Maryland Cas. Co. v. Mitchell*, supra. That former statute was specifically considered by the court in reaching its decision that there was no statutory prohibition on a claimant's simultaneous receipt of permanent partial disability benefits for one injury and temporary total disability benefits for another injury. Thus, insofar as *Maryland Cas. Co. v. Mitchell*, supra, interpreted former Ga. Code Ann. § 114-409 as not barring the simultaneous compensability of two separate injuries, that interpretation remains viable and is controlling in this case. See generally *Whitaker Acres v. Schrenk*, 170 Ga. App. 238, 241 (316 SE2d 537) (1984). Therefore, existing statutory provisions are no bar to appellee's simultaneous receipt of OCGA § 34-9-263 benefits for her knee injury and OCGA § 34-9-261 benefits for her back injury.

5. Appellants finally assert what is essentially a public policy argument. They contend that there will be no economic incentive for an employee to return to work if he is entitled to receive simultaneous compensation benefits.

In the limited circumstances where it is authorized, the payment of simultaneous compensation does not constitute a windfall "double award" to a twice-injured claimant. *Maryland Cas. Co. v. Mitchell*, supra at 441. All we hold is that an injured employee is not precluded from receipt of compensation for a permanent partial *physical* disability, while at the same time receiving compensation for a temporary total or partial *economic* disability which results from an entirely separate injury. Thus, a portion of the simultaneous compensation is payable to the claimant regardless of his economic status. We fail to see how public policy would be advanced by overruling *Maryland Cas. Co. v. Mitchell*, supra, and by holding that an employee who has lost a specified member of his body or the use thereof and who also has suffered another separate injury which results in an impairment of his earning capacity should not be entitled to be fully compensated by an award for both losses, one permanent and physical and the other temporary and economic, that he simultaneously suffers as the result of his employment. However, the provisions of OCGA § 34-9-104 are always available to an employer to seek a change of condition hearing on the ground that an employee receiving simultaneous compensation no longer continues to be *both* physically and economically disabled as the result of his employment.

6. There remains one unresolved issue in the instant case. In *Maryland Cas. Co. v. Mitchell*, supra at 441, the court did not reach

"[t]he question as to whether the amount of weekly compensation for permanent partial disability should have been deducted from the amount of temporary total allowable under the law. . . ." Likewise in the instant case, the only issue that heretofore has been addressed by either the Board or the superior court is whether benefits are payable to appellee simultaneously. We have resolved that issue in favor of simultaneous payment. The issue of whether an authorized award of simultaneous compensation for two separate injuries is nonetheless limited to a maximum amount which is less than the combined sum of full benefits if payable separately has never been addressed below. It is our opinion that the issue of the *amount* of compensation to which appellee is entitled is one which is more properly to be addressed in the first instance by the Board. Accordingly, the order of the superior court is affirmed with direction that the entire case be remanded to the Board for the entry of a new award of compensation, which award is no longer to be premised upon the erroneous legal theory that appellee's separate injuries are not simultaneously compensable.

*Judgment affirmed with direction. Birdsong, P. J., and Sognier, J., concur.*

DECIDED APRIL 23, 1985 —
REHEARING DENIED MAY 8, 1985 —

*H. Durance Lowendick*, for appellants.
*E. Lamar Gammage*, for appellee.