### 70880. HOLT'S BAKERY et al. v. HUTCHINSON.
(338 SE2d 742)

BEASLEY, Judge.

On July 8, 1981, Beatrice Hutchinson suffered an injury to her back and neck as she carried a pan of doughnuts while working at Holt's Bakery. She worked until July 21, when she became totally unable to continue, and she remained out of work until her return on August 10. She claimed and received temporary total disability income benefits for the period of time she was out of work, plus medical expenses.

On July 21, Ms. Hutchinson was treated by a physician who signed a "Medical Report" Form WC-18 indicating that the employee had suffered a lower lumbar sprain, had no permanent disability, would not likely need vocational rehabilitation and would be able to return to normal work in about three weeks. No "Final Medical Report" Form WC-20 was filed. The Form WC-18 was filed with the Board on September 9, on which date the insurer filed Form WC-2 showing that temporary total disability payments to Hutchinson had commenced and had been suspended; "Recurring Temporary Total" was typed at the top of the form. Also on this date, the insurer filed Form WC-4 reflecting that the final weekly payment of benefits was made on August 19, 1981. They were designated as the "total" type of wage payment, and medical expenses were also shown as paid. The WC-4 report responded "none" in the box marked "if permanent injury state loss." The forms were signed only by the adjuster. Neither form provided space for Hutchinson's signature.

On October 14, 1983, the employee again ceased to work for the bakery, this time permanently, due to the gradual worsening of her back condition which finally prevented her from continuing. She filed a claim for compensation on February 7, 1984, alleging a new injury on October 14, 1983 and a 20% permanent partial disability rating. The employer and insurer filed a notice to controvert payment of compensation.

At the hearing before the administrative law judge, the parties stipulated that the original accident was on July 8, 1981, with a disa-

bility date of July 21, 1981, that the claimant was alleging either a new accident or a change of condition as of October 14, 1983, the last day Hutchinson worked at the bakery, and that the average weekly wage figure would be different from the 1981 accident to the 1983 cessation. The parties further stipulated to the wages for thirteen weeks prior to the October 1983 incident which were all based on a reduced work week. Ms. Hutchinson claimed the reduction was necessitated by her back condition. Claimant's counsel informed the ALJ that: "We will not contend that Ms. Hutchinson, on this 14th day of October, actually had an injury and fell or hurt her back again that day. Our contention is going to be that she got injured on the job working for Holt's Bakery back on July 8, 1981. That she continued to work as long as she possibly could, and that the working aggravated — In other words, her condition worsened to the point that as far as we're concerned, back on the 14th day of October, 1983, that she had worked as long as she possibly could and that a new injury originated by result of that." The employer and the insurer moved to dismiss Hutchinson's claim as too late.

The ALJ issued an award finding that Hutchinson "continued to do her job at Holt's Bakery, although as a result of the wear and tear of ordinary life and the activity connected with performing her normal duties the condition of her back gradually became worse until such time as she was forced to cease work after October 14, 1983. She did not suffer any specific incident after July 8, 1981, which affected her back. After the claimant's return to work on August 10, 1981, she did not have any medical treatment provided by the employer/insurer. She did see a chiropractor on several occasions but never submitted a bill to her employer or insurer for payment . . . the claimant had a change in condition on October 14, 1983. I find, since she had an accident on July 8, 1981, became disabled, received income benefits during her period of disability, and did not experience any specific incident which aggravated her condition, that she did not have a 'new accident' on October 14, 1983. On February 7, 1984, the claimant, through her attorney, filed a claim for benefits with the State Board of Workers' Compensation. I find that her claim was filed more than two years since the date of final payment of income benefits and was not timely filed in accordance with O.C.G.A. § 34-9-104 (b)." She therefore granted the motion and denied the claim.

On appeal, the Board found that Hutchinson's claim was not time-barred because permanent partial disability payments due her had not been completely paid, that she was due weekly temporary total disability benefits from October 25, 1981 until terminated by law, and that she was due permanent partial disability weekly indemnity benefit payments based on a 20% disability rating to commence upon the completion of temporary total payments and to continue

until terminated by law.

The employer and the insurer appealed to the superior court and after a hearing and the submission of briefs, the court affirmed the Board's award, stating: "This ruling is based on a finding that claimant's injury falls under the first category enunciated in *Central State Hospital v. James*, 147 Ga. App. 308 (1978) whereby aggravation of an injury previously sustained on the job constitutes a 'new accident' as of the date the employee ceases his employment and therefore the two-year statute of limitations for 'change in condition' is inapplicable."

We granted application for discretionary appeal.

1. Appellants assert that the court erred in ruling that Hutchinson in 1983 sustained a "new accident" rather than a "change in condition" as both are defined in *Central State Hosp. v. James*, 147 Ga. App. 308, 309 (1) (248 SE2d 678) (1978). The correct characterization of Hutchinson's injury is central to the question of the timeliness of her claim.

In order to better distinguish between old and new injuries, the court in *Central State Hosp. v. James*, supra, outlined three of the frequently occurring situations in the work place: "(a) One instance is where the claimant is injured on the job but continues to perform the duties of his employment until such time as he is forced to cease work because of the gradual worsening of his condition which was at least partly attributable to his physical activity in continuing to work subsequent to his injury. Our courts have held that the one-year statute of limitation begins to run from the date the claimant was forced to cease his employment. They base this holding on the theory that the date of the 'new accident' is the date that the disability manifests itself. [Cits.] . . . (b) A second example is where the claimant sustains a second accident *as the result of a specific job-related accident* which aggravates a pre-existing condition which resulted from a prior accident. In these circumstances the second accident which aggravated the pre-existing condition is a new injury, if the second accident at least partially precipitated the claimant's disability. [Cit.] This is true whether the claimant is immediately disabled or if he continues to work after the second accident and his condition gradually worsens until he is forced to cease his employment. [Cit.] (c) A third situation is where the claimant sustains an injury and is awarded compensation during his period of disability. Subsequent thereto he returns to his employment performing his normal duties or ordinary work. Then as a result of the wear and tear of ordinary life and the activity connected with performing his normal duties and not because of a specific job-related incident his condition gradually worsens to the point that he can no longer continue to perform his ordinary work. This gradual worsening or deterioration would constitute a change in his

condition and not a new accident. [Cits.]" *Central State Hosp. v. James,* supra at 309, 310 (1).

" 'The proper classification of the basis of a claim as an "accident," "change of condition," or "new accident" hinges generally upon two factors: (1) Whether the claim seeks initial or additional compensation for the "injury"; and, (2) the proximate cause of the injury for which compensation is being sought. A claim for a work-related injury arising from an "accident" is an initial claim for compensation. To be compensable, an "accident" claim must be filed within one year of the original job-related incident of which the employer was timely notified and requires a causal connection between the conditions under which the work was required to be performed and the injury which forms the basis for the claim. [Cits.] A claim for a "change of condition" is a claim for additional compensation under the original award. A "change in condition" claim for additional compensation is predicated upon the claimant's gradually worsening condition, from the wear and tear of performing his usual employment duties and of ordinary life, to the point that he can no longer continue to perform his ordinary work. [Cits.] A claim for a work-related injury arising from a "new accident" is also an initial claim for compensation, but, unlike an "accident" claim, it has not been filed within one year of the occurrence of an *original* job-related incident of which the employer was timely notified. [Cit.] An award for disability arising from "new accident" must be predicated upon the filing of a claim within one year from either the date the claimant was forced to cease work because of the gradual worsening of his condition (which was at least partly attributable to his physical activity in continuing to work subsequent to his original job-related incident) or the date of the occurrence of a subsequent specific job-related incident which aggravates the claimant's pre-existing, and theretofore, uncompensated condition. [Cit.]' *Slattery Assoc. Inc. v. Hufstetler,* 161 Ga. App. 389, 390 (288 SE2d 654) (1982)." *Dairymen, Inc. v. Wood,* 162 Ga. App. 430, 431 (2) (291 SE2d 763) (1982).

In properly categorizing the nature of Hutchinson's later claim for compensation, it is important to note that the classifications outlined in *Central State Hosp. v. James,* although clearly covering many situations of compensable injury, are not exclusive or exhaustive of the possible circumstances giving rise to a claim for compensation. Moreover, *Central State* was decided when claimant's initial compensation was made pursuant to an award or order by an ALJ or the Board, and the language in that case and others utilizing the outlined classifications of compensable injury (see, e.g., *Dairymen, Inc. v. Wood,* supra) discuss the concept of change of condition in relation to an original award or order of compensation.

In 1978, there were significant amendments to the workers' com-

pensation law (Title 34, Chapter 9; see Ga. L. 1978, p. 2220 et seq.) which in part were intended to more expeditiously provide claimants with needed financial assistance by obviating, in uncontroverted claims, the need for a formal award by an ALJ or the Board prior to a claimant receiving any compensation. Yet, much of the current statutory language of the Workers' Compensation Act still defines or articulates issues involving determinations of compensability and the consequent appropriate proceedings in terminology adjusted to the former requirements of formal or preliminary independent administrative approval of compensation to claimants. OCGA § 34-9-104 (a) now provides that "the term 'change in condition' means a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by the [Workers' Compensation Act], which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award *or otherwise.*" (Emphasis supplied.)

In this case, Hutchinson received the initial compensation without any approval or intervention by an ALJ or by the Board. Therefore, Hutchinson's injury in 1983 could only be considered a change of condition if the forms filed by the insurer can be said to have unilaterally established her wage-earning capacity, physical condition, or status. For the purpose of a claim of change of condition and a consequent petition for modification, this court has treated the initial payment of compensation to a claimant, without any apparent formal award or order but otherwise established by the employer/insurer filing the appropriate forms and providing compensation to the claimant, as an award or order of compensation sufficient to trigger the two-year time frame in which the legislature has permitted claimants to seek modification of compensation. See OCGA § 34-9-104 (b); *Brake Supply Co. v. Banks*, 175 Ga. App. 242 (333 SE2d 129) (1985). In Hutchinson's case, there was no establishment of liability on the part of the employer for workers' compensation benefits to her which was established by an award of the Board prior to the insurer's filing of the WC-4 form, i.e., prior to the insurer's unilateral termination of liability. See *Cedartown Nursing Home v. Dunn*, 174 Ga. App. 720 (330 SE2d 905) (1985).

Because of the phraseology of the current modification statute in light of the clear legislative intent to avoid much of the need of formal proceedings prior to compensation, it is not difficult to understand how the reviewing trial court might have deemed Hutchinson's claim to be a new accident rather than what we properly find it to be, a change of condition. The court was designating as a causative factor what was actually an effect of something that had occurred earlier, i.e., the cessation of work due to the exacerbated injuries was the re-

sult and not a cause of another injury.

The trial court erred in classifying Hutchinson's 1983 injury as a new accident rather than as a change of condition.

2. Appellants contend that the court erred in holding that the two-year statute of limitation for a change of condition, as codified in OCGA § 34-9-104 (b), was inapplicable under the facts of the present case.

When properly characterized as a change of condition, claimant's 1983 condition causing total inability to work is controlled by OCGA § 34-9-104 (b) which provides in part: "The board on its own motion may propose or any party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided that the prior decision of the board was not based on a settlement; and provided, further, that at the time of application *not more than two years have elapsed since the date of final payment of income benefits due under this chapter.*" (Emphasis supplied.)

This subsection of the statute must be read so as to be given reasonable meaning and construction with subsection (a) and the intent of the legislature as expressed in the Act in general in its current form. That is, subsection (b) would authorize an application for altered benefits because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered or otherwise established in a prior final decision to pay or to deny compensation. The pivotal question is whether or not the two-year time limitation effectively bars her claim here.

3. The employer and insurer maintain that the instant case is controlled and disposed of in their favor by our recent holdings in *Moore Business Forms v. Matthews*, 170 Ga. App. 106 (316 SE2d 552) (1984) and *Georgia-Pacific Corp. v. Sanders*, 171 Ga. App. 799 (320 SE2d 850) (1984). We do not agree.

As appellants correctly observe in their brief, in both of those cases this court addressed the issue of a time bar under the statute in effect prior to the 1978 amendments to the workers' compensation law. Former Code Ann. § 114-709 provided that the two-year statute of limitation for seeking a change of condition would run from the date that the Board was notified that the final payment of a claim had been made pursuant to a Board order. If that was the law to be applied to Hutchinson's claim, then in the absence of a supplemental return to work agreement or any Board award prior to the filing of the Form WC-4 (see, e.g., *Cedartown Nursing Home v. Dunn*, supra) it would be difficult to see how the employee's claim for a change of condition would not be outside the time frame permitted by statute. But a very different situation exists here.

OCGA § 34-9-104 (b) provides that an application for a change of condition must be made not more than two years from the date of final payment of income benefits *due under the Act*. What income benefits were due Hutchinson under the Act? If the evidence supports the conclusion that she was due only temporary total disability benefits, then the date of last payment of such benefits on August 19, 1981, would start the running of the two-year statute of limitation. However, if there is evidence to support a finding that Hutchinson was potentially due other income benefits at the time of the 1981 injury and was not paid these benefits, then her 1984 claim for change of condition is a viable one.

It is undisputed that Hutchinson did not receive any temporary partial disability benefits as provided in OCGA § 34-9-262 nor any permanent disability benefits as authorized by OCGA § 34-9-263, immediately following the cessation of payments in 1981 for temporary total disability (OCGA § 34-9-261, then Code Ann. § 114-404).

Temporary total disability under OCGA § 34-9-261 means impairment of earning capacity. Regardless of the percentage of an employee's physical disability, so long as he suffers a total impairment of his earning capacity he is "totally disabled" and entitled to benefits under OCGA § 34-9-261 (Code Ann. § 114-404). *Hensel Phelps Constr. Co. v. Manigault*, 167 Ga. App. 599, 603 (307 SE2d 79) (1983).

Temporary partial disability is defined in OCGA § 34-9-262 (Code Ann. § 114-405) as that disability to work resulting from the injury which is partial in character and temporary in quality. It is midway between "total disability" (OCGA § 34-9-261) and "permanent partial disability" (OCGA § 34-9-263) and involves both economic and medical evaluation. *Blevins v. Atlantic Steel Co.*, 172 Ga. App. 557, 558 (323 SE2d 861) (1984).

Rather than relating to impairment of earning capacity, permanent partial disability relates to actual physical impairment, that is, loss or loss of use of specific body members or loss of use of the employee's whole body. OCGA § 34-9-263; *Hensel Phelps Constr. Co. v. Manigault*, supra at 603; *Cedartown Nursing Home v. Dunn*, supra at 724-725.

There is uncontroverted evidence in the record that Hutchinson had continual problems with her back from the date of initial injury on July 7, 1981, up until her final cessation of work for the bakery on October 14, 1983. There are also uncontroverted assertions in the record that the employer had notice of Hutchinson's continuing problems. In fact, the insurer acknowledged notice of the potentially ongoing nature of the injury, even prior to its purported final payment of temporary total disability benefits when, on its Form WC-2, it denominated Hutchinson's injury as *recurring* temporary total. In other words, by its own statement, the insurer's WC-4 form was in-

complete and prematurely filed. See *Cedartown Nursing Home v. Dunn*, supra at 721. Moreover, at the initial hearing before the ALJ, all counsel stipulated to a listing of the claimant's shortened work hours and earnings prior to ceasing work in 1983. This supports her testimony that she was compelled by her physical condition to work reduced hours until the time of complete work stoppage on October 14, 1983, and the beginning of total and permanent inability to work.

There is evidence to support the Board's determination that permanent partial disability payments due Hutchinson had not been paid, and therefore that her claim for change of condition was not barred by the provisions of OCGA § 34-9-104 (b). If the Board's findings of fact are supported by any evidence, they may not be overturned on appeal to the superior court. *Caraway v. ESB., Inc.*, 172 Ga. App. 349, 351 (323 SE2d 197) (1984). We do not address the question of any entitlement by Hutchinson to income benefits for temporary partial disability following the cessation of benefits for temporary total disability inasmuch as the Board made no finding in this regard and it has not been expressly raised on appeal.

4. Appellants further assert that the court erred in affirming that portion of the Board's award that found: "Claimant is due weekly temporary total disability benefits *from October 25, 1981* until terminated by law." (Emphasis supplied.)

After carefully considering the entire record before us we find no evidence to support this portion of the Board's award beginning the time from which Hutchinson would be due any temporary total disability benefits. In fact the record supports the contrary finding that she returned to work in August of 1981 and thereafter until October 14, 1983, was not totally disabled in regard to earning capacity, although she was partially disabled for about six months prior to complete cessation in that she could not work full time.

While this finding by the Board of a beginning point for temporary total disability benefits may be an oversight or a typographical error, we cannot substitute a finding of a date inasmuch as the exclusive authority to make findings of fact in claims under the Workers' Compensation Act is vested in the Board of Workers' Compensation. *Employers Ins. Co. of Ala. v. Amerson*, 109 Ga. App. 275, 277 (2) (136 SE2d 12) (1964). Inasmuch as this is so and we cannot say that the erroneous finding of fact is immaterial as a matter of law, the case is remanded for the Board to reconsider the date from which the claimant would be due temporary total disability benefits, if any, and make an award with the correct finding taken into consideration. *Assurance Co. of America v. Shepherd*, 155 Ga. App. 36, 37 (270 SE2d 268) (1980).

5. Lastly, appellants maintain that the court erred in affirming that portion of the Board's award which afforded Hutchinson benefits

based upon the finding that: "Claimant is due permanent partial disability weekly indemnity benefit payments based on a 20% disability rating to commence upon the completion of temporary total payments, and to continue until terminated by law." They claim that this was error inasmuch as the 20% disability rating was obtained approximately 2-½ years after Hutchinson's return to work in 1981 with what the employer/insurer term "no disability."

First, we take issue with appellants' characterization of the employee's state of physical and/or earning capacity as being without disability after her return to work in 1981. See Division 3, supra. Moreover, the physician's medical report filed in 1981 stating that she had no permanent physical disability (see statement of facts, supra) would not be dispositive; "[i]t is well settled that opinions of medical experts are advisory only and may be accepted or rejected by the board. [Cit.]" *Caraway v. ESB., Inc.*, supra at 350.

Furthermore, it is clear that the Board intended to award Hutchinson permanent partial disability benefits based upon a 20% disability rating to commence following the termination of temporary total disability benefits, which apparently were intended to date from her complete cessation of earning capacity. See Division 4, supra. The record discloses a "Final Medical Report" (Form WC-20 filed with the Board on March 12, 1984) made by Hutchinson's treating physician in regard to her 1983 injury which states that she has a 20% permanent disability resulting in the 1983 cessation of work. The record also contains other statements from the treating physician to this effect. The payments for the 20% disability are within the time frame for which there is evidence to support such permanent partial disability. Therefore we cannot find reversible error as to this finding. *Caraway v. ESB., Inc.*, supra at 351.

*Judgment reversed with direction. Pope, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED DECEMBER 3, 1985.

*Elton L. Wall*, for appellants.
*Dewey N. Hayes, Jr., Dewey N. Hayes, Sr.*, for appellee.