74746. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY v. LEDBETTER.
(361 SE2d 878)

BEASLEY, Judge.

On January 16, 1982, the appellee, Allen Ledbetter, injured his back in the course of his employment with the Metropolitan Atlanta Rapid Transit Authority. For approximately two weeks he received workers' compensation income benefits, which were suspended upon his return to work. Ledbetter made no further claim for benefits until April 22, 1985, when his attorney contacted the State Board of Workers' Compensation, requesting a hearing on a change in condition claim for permanent partial disability. The administrative law judge's award of benefits for a twenty percent permanent partial disability was adopted by the full board and affirmed by the superior court. This discretionary appeal followed.

In rejecting MARTA's defense that Ledbetter's claim was barred

by the two-year limitation period provided under OCGA § 34-9-104 (b), the ALJ held that "[s]ince it is obvious that claimant had continual back pain from his work related injury of 1982 and that he had some degree of permanent partial disability, the WC-2 suspending payment of income benefits for total disability did not represent final payment of income benefits due." The ALJ apparently relied upon *Holt's Bakery v. Hutchinson,* 177 Ga. App. 154 (3) (338 SE2d 742) (1985), wherein this Court ruled that where there is evidence to support a finding that a claimant was potentially due other income benefits at the time of the compensable injury and was not paid the benefits, then OCGA § 34-9-104 (b) is inapplicable.

MARTA contends that because the instant case is so distinguishable factually from *Holt's Bakery,* reliance upon that case in awarding Ledbetter benefits was a perversion of the law. To the contrary. What is meant by "potential" is not that the type of disability may arise in the future, but rather that there is evidence that it existed at the time although no claim was made for it.[1] In *Holt's Bakery,* there was evidence that Mrs. Hutchinson suffered what was thought to be temporary partial disability from the time of cessation of temporary total disability until the time she claimed permanent partial disability. Although she did not file a claim for such benefits, this evidence supports the conclusion that there were benefits due her under the act during this time. Thus, the statute was not running.

The same reasoning applies in the present case, although here the arguable unclaimed benefit due was permanent partial disability. We should not disregard the plain language of the legislature that a party may apply for a change of condition two years from "the date of final payment of income *benefits due under this chapter.*" OCGA § 34-9-104 (b). (Emphasis supplied.)

Applying it to the facts of this case, the judgment of the lower court is affirmed.

*Judgment affirmed. Birdsong, C. J., McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Deen, P. J., Carley and Sognier, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

1. Because the majority opinion has mortally wounded the limitation period for filing a change in condition claim, I offer this dissent as a eulogy for OCGA § 34-9-104 (b).

OCGA § 34-9-104 (b) imposes a two-year limit on asserting

---

[1] We made distinctions between different *types* of benefits and the law thereby applicable to them in *ITT Continental Baking Co. v. Powell,* 182 Ga. App. 533 (356 SE2d 267) (1987). There the categories related to the separate procedures for medical benefit claims as opposed to lost wages claims.

claims for a change in condition, that limitation period commencing upon "the final payment of income benefits due . . . ." There was nothing nebulous about that statutory limitation until this court added the gloss, "potentially due other income benefits," in *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154, 160 (338 SE2d 742) (1985), which the majority opinion affirms in this case. That judicial gloss emasculates the limitation period, allowing easy avoidance simply by raising a colorable claim that at the time of the final payment of income benefits, the claimant was *potentially* due other income benefits. In other words, the change in condition claim would not be barred where a claimant may have been entitled to more benefits had he applied for them sooner. Under the holdings of *Holt's Bakery* and the instant case, a worker could wait 10 or 20 or 30 or even 50 years before filing a change in condition claim. Every conceivable purpose for a statute of limitations is defeated by this holding.

The *Holt's Bakery* construction of OCGA § 34-9-104 (b) just does not make sense. "In its larger sense the word 'due' is often used to cover liabilities matured and unmatured, or as importing an existing obligation, whether the time of payment has arrived or not." *Pope v. Matthews*, 125 Ga. 341, 347 (54 SE 152) (1906). In its narrower and perhaps more frequently used sense, the word means owing and immediately payable, or matured. See CJS Due, pp. 572-573. Were one to apply the "larger sense" definition of due, perhaps the *Holt's Bakery* gloss of "potentially due" would be acceptable. However, that construction is possible only by ignoring the rest of the statute that measures the limitation period from "the date of final payment of income benefits." Applying the statute in terms of benefits "potentially due," the question arises of why the statute even contains that measuring point, since there obviously will be no date of payment of income benefits, much less "the date of final payment," from which the limitation period will run. *Holt's Bakery* (and now the majority opinion) may thus construe the limitation period of OCGA § 34-9-104 (b) out of existence.

The only sensible meaning to be applied to the word "due" in the context of this statute is the narrower definition. OCGA § 34-9-104 (b) simply envisions situations where a claimant received income benefits which were terminated, and bars any subsequent claim for a change in condition that is not filed within two years of the termination of those benefits actually paid. See Larson, 3 Workmen's Compensation Law, § 78.43 (g).

As noted by this court itself in *Holt's Bakery* at 158, the 1978 amendments to the workers' compensation law "in part were intended to more expeditiously provide claimants with needed financial assistance by obviating, in uncontroverted claims, the need for a formal award by an ALJ or the Board prior to a claimant receiving any com-

pensation." Under the 1978 amendments, the commencement of the limitation period in OCGA § 34-9-104 (b) (former Code Ann. § 114-709) was "changed" from "the date that the board is notified that the final payment of a claim has been made pursuant to a board order" to "the date of final payment of income benefits due under this chapter." The statute apparently was so amended merely to define a commencement date for the limitation period that would encompass both formal award and voluntary payment situations. After all, it would be something of an anomaly to foster compensation without a formal award, yet still require a formal board order before those benefits could be terminated. See, in this regard, *Cedartown Nursing Home v. Dunn*, 174 Ga. App. 720 (330 SE2d 905) (1985).

The statutory limitation in OCGA § 34-9-104 (b) is not glued together with rubber cement, capable of flexion at the will of either claimant or court. The cryptic and amorphous application of the limitation period in *Holt's Bakery* and the instant case will plague claimants, attorneys, administrative law judges, the board, superior courts, this court, and possibly the Supreme Court with confusion and increased litigation. The statutory construction expounded in *Holt's Bakery* should be put to sleep, rather than the statute itself. Inasmuch as Ledbetter did not assert a claim for a change in condition until over three years from the date of the final payment of income benefits in 1982, the claim was barred by the limitations period. Ledbetter's claim is "merely a voice crying from the tomb, praying for resurrection." *DeVane v. Atlanta Birmingham &c. R. Co.*, 4 Ga. App. 136, 141 (60 SE 1079) (1908).

2. Assuming the viability of *Holt's Bakery*, however, the instant case is easily distinguishable on its facts. In *Holt's Bakery*, the WC-2 form suspending payment of income benefits also indicated "Recurring Temporary Total"; no final medical report was ever filed. In the instant case, at the time of the suspension of the income benefits in 1982, there was no indication of a continuing or recurring disability, and a final medical report was filed which clearly stated that Ledbetter could return to his normal work duties and that he had no permanent disability from the injury. At the time of the suspension of benefits and filing of this final medical report, there was absolutely no evidence to support any finding that Ledbetter was potentially due other income benefits. If Ledbetter subsequently experienced back problems, under OCGA § 34-9-104 (b) he had two years from the date of final payment of the original income benefits in which to file a claim for a change in condition. He did not, and his claim should be barred under that statute.

I am authorized to state that Judge Carley and Judge Sognier join in this dissent.

DECIDED SEPTEMBER 9, 1987 —
REHEARING DENIED OCTOBER 15, 1987 — 

*Michael D. Usry*, for appellant.
*John S. D'Orazio*, for appellee.