76447. JUSTICE v. R. D. C., INC. et al.

(369 SE2d 493)

DEEN, Presiding Judge.

Mary Ruth Justice was injured on January 12, 1979, while on the job at Rossville Spinning Mills when she fell and fractured her right wrist. She was treated by an approved physician who reduced the fracture, applied a cast, and instructed her to keep her right arm elevated and to take certain medications for pain. The doctor's notes indicated that on her fourth post-operative office visit on March 28 he noted that the wrist was healing satisfactorily and that she showed "diffuse tenderness to palpitation about the right shoulder" on examination, and that she had "limited internal rotation with the right shoulder." He prescribed range of motion exercises to the shoulder, hands and wrist and noted that she had "100% temporary impairment." He stated that he planned to take X-rays of the right wrist and shoulder prior to her next visit scheduled in approximately four weeks. Visits on April 27, May 8, May 18, June 8, June 12, June 14, July 26, and Sept. 5, all indicate that Ms. Justice continued to have problems with her shoulder and that she was treated for it and for her wrist. On her October 17 visit, the doctor noted that she had about "80% to 90% of ROM of the right shoulder in comparison to the left. She has about 80% of ROM of the right wrist in comparison to the left. . . . I feel that the patient has 50% total impairment at this time." She was advised that she could return to work on October 22. Notes on subsequent visits all discuss the shoulder problem as well as the wrist. On January 26, 1980, she was rated as having a 20 percent temporary impairment. On April 10, 1980, her employer terminated her employment because of her inability to do her work. In May she began working at a movie theatre part-time at a lower hourly rate of pay. On October 2, 1980, the doctor's notes reveal that she had little discomfort in the shoulder, but the right forearm had 80 percent to 90 percent ROM, and she was rated as having a 20 percent permanent physical impairment.

On March 18, 1981, the employer made a "final payment" of thirty-two weeks of disability pay for the 20 percent permanent partial disability to the hand. The employer continued paying medical benefits for all her medical treatment to her wrist and shoulder. On August 26, 1982, the attending physician rated her right upper extremity as being 20 percent temporarily impaired, and on October 12, 1982, he rated her as having a "20% permanent physical impairment/loss of physical function to the right upper extremity as a whole." The doctor's notes of February 3, 1983, show that the impairment is unchanged. In January of 1984, some five years after the wrist was fractured, the doctor notes that she has very little discomfort in it, but that she had pain at extremes of motion or after using her hand

for any length of time. She was doing well with her shoulder, but subsequent visits indicated that she was still having pain in the wrist and right shoulder.

The doctor's fee statement shows that the employer paid all her medical expenses, including X-rays for treatment to her wrist and shoulder, but ceased paying her medical bills on November 17, 1983. After she filed a claim for workers' compensation benefits and a hearing was held, the employer and its insurer accepted liability for the balance of the physician's treatment.

The Administrative Law Judge found that the employer/insurer raised a defense of statute of limitations under OCGA § 34-9-104, that temporary partial disability benefits due since April 1980 were not paid, that the doctor's permanent partial disability rating of 20 percent to the employee's right upper extremity assigned August 26, 1982, was due but not paid, and that the statute of limitations is tolled under the holding in *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154 (338 SE2d 742) (1985). The ALJ denied both parties' request that attorney fees be assessed against the other. The claimant was awarded $103.85 per week from April 10, 1980, to May 20, 1980, and $36.90 per week from May 20, 1980, to October 5, 1985, and $103.85 from October 5, 1985, for her disability rating of 20 percent to the upper extremity, with credit to be taken for previously paid weekly income benefits for the 20 percent permanent partial disability to her right hand by reducing the total number of weeks paid. The Full Board affirmed.

The award was reversed on appeal to the superior court. That court held that the board failed to apply OCGA § 34-9-104. It further found that a disability rating not assigned to the shoulder for some seventeen months after the board was notified of termination of the "PPD" benefits, and the finding that her shoulder problems were causally related to her on-the-job accident, were based on a medical report dated November 14, 1986, some seven years after the accident and five years after the benefits were terminated, and four years after the disability rating was assigned. This court granted Ms. Justice's petition for a discretionary appeal.

1. In *Holt's Bakery v. Hutchinson*, supra, this court held that where there is evidence to support a finding that a claimant was potentially due other income benefits at the time of the compensable injury and was not paid such benefits, OCGA § 34-9-104 (b) is not applicable.

The evidence as set forth above showed that the claimant was treated for her shoulder problem, along with her wrist injury, as early as two months after her right wrist was fractured. Indeed, the evidence shows that the problem manifested itself after she was required to keep her right forearm elevated. The employer/insurer at no time

disputed medical payments for X-rays and other medical treatments for the shoulder. In determining what is meant by "potentially due" under *Holt's Bakery*, supra, this court held that "potential" means "not that the type of disability may arise in the future, but rather that there is evidence that it existed at the time although no claim was made for it." *MARTA v. Ledbetter*, 184 Ga. App. 518, 519 (361 SE2d 878) (1987). The ALJ found that such evidence existed, and we agree. Thus the trial court erred by failing to apply the "any evidence" rule. *Chevrolet-Pontiac-Canada &c. Corp. v. Millar*, 182 Ga. App. 889 (357 SE2d 598) (1987).

2. To recover attorney fees pursuant to OCGA § 34-9-108, a party must prove that the other party "brought, prosecuted and defended in whole or in part without reasonable grounds" the matter in issue. The ALJ found that the doctor's notes do not mention a shoulder problem until several months after the claimant's injury and did not tie the shoulder problem to the wrist injury until much later. The ALJ found that the failure to file WC-3 forms and the failure to pay the physicians' medical bills were not without reasonable grounds. The failure to pay permanent partial disability was also not without reasonable grounds, as the employer had paid a previous rating on the hand, and the employee was released for return to work in 1980 without restrictions. Moreover, the employer/insurer was not informed of the claim for total disability or indemnity for total disability for reduced income. As there was some evidence to support these findings of fact, we find no error. *Chevrolet-Pontiac-Canada &c. Corp.*, supra.

*Judgment reversed. Carley and Sognier, JJ., concur.*

DECIDED APRIL 25, 1988 —
REHEARING DENIED MAY 19, 1988.

*Timothy A. Deere*, for appellant.
*John C. Bruffey, Jr., James C. Weidner*, for appellees.